C.L., Plaintiff-Appellant,

v.

Donald L. OLSON and Donald Hohlstein,
Defendants-Respondents.†

Court of Appeals

*No. 85–1807. Submitted on briefs October 17, 1986.—Decided
May 21, 1987.*

(Also reported in 409 N.W.2d 156.)

† Petition to review granted.

225

For the plaintiff-appellant the cause was submitted on the briefs of *Robert Anker Christensen* and *Christensen & Kenney* of Madison.

For the defendants-respondents the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Daniel S. Farwell,* assistant attorney general.

Before Gartzke, P.J., Eich and Sundby, JJ.

GARTZKE, P.J. C.L. appeals from an order granting summary judgment dismissing her complaint against Donald Hohlstein, a state parole agent.

The complaint alleges that the parole agent negligently permitted a parolee under his supervision, Donald Olson, to operate an automobile. The dispositive issue is whether governmental immunity protects the agent from liability. We hold that when permitting the parolee to drive, the agent exercised governmental discretion. We conclude that the agent is immune from liability arising out of that decision. We therefore affirm.

Summary judgment is governed by sec. 802.08, Stats. Appellate and trial courts apply the same summary judgment methodology, *In re Cherokee Park Plat,* 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582 (Ct. App. 1983), and we need not repeat it here.

C.L.'s complaint alleges that in October 1982 she missed the bus on her way to work. She accepted Olson's offer to take her by automobile, but he drove to the country where he assaulted her. She alleges that the parole agent should have known Olson had used automobiles outside of normal working hours to abduct women to assault them, and that one of the agent's duties was to grant or deny permission for Olson to operate a motor vehicle. C.L. alleges that the agent negligently failed either to refuse Olson such permission or to restrict his driving to normal employment hours, and that the agent left in Olson's hands the means to repeat his past criminal conduct and to assault her. We conclude that the complaint states a claim grounded on negligence.

The parole agent's answer denies he was negligent and denies a causal connection existed between his negligence, if any, and the assault. He admits that he had authority to deny Olson permission to operate a motor vehicle but that he gave it. He alleges that he gave permission on condition that Olson not operate a

vehicle equipped with any device capable of monitoring police, fire or emergency communications. In granting permission and imposing that condition, he exercised his discretion as a parole officer. He asserts that as a state employee acting within the scope of his employment, he is immune from liability because he exercised discretion when supervising Olson and because he breached no ministerial duty to C.L.

We conclude that the parole agent's answer asserts the governmental immunity defense and raises factual issues regarding the agent's negligence, causation and immunity. The general rule is that a public officer is immune from tort liability to one injured as a result of an act performed within the scope of the officer's official duty, unless the officer negligently performed a purely ministerial duty. *Lister v. Board of Regents,* 72 Wis. 2d 282, 300–01, 240 N.W.2d 610, 621–22 (1976).

We turn to the affidavit supporting the parole agent's motion to determine whether he made a prima facie case for summary judgment. To do so, a moving defendant must show a defense which would defeat the claim. *In re Cherokee Park Plat,* 113 Wis. 2d at 116, 334 N.W.2d at 583. If the agent's affidavit shows a prima facie case for immunity, and if that case is not rebutted, we need not deal with the negligence and causation issues. In view of our conclusion that the affidavit establishes a prima facie immunity defense, we limit our review of the affidavit to those parts relevant to immunity.

According to the parole agent's affidavit, in September 1979 Olson was convicted of nonconsensual sexual contact and sexual intercourse with a person

between the ages of 12 and 18. In April 1982 Olson was granted discretionary parole. The agent met with Olson upon his release and discussed with him the rules of parole supervision.

The agent's affidavit continues that under the rules of the Department of Health and Social Services, a parole agent may grant a parolee permission to operate a motor vehicle. He gave Olson permission to drive because of the locations of his rural home and of his place of employment, because his job required him to travel within a 50- to 70-mile radius, and because the lack of public transportation would otherwise prevent him from participating in normal social, personal and business activities. The agent imposed a restriction against Olson's use of a vehicle capable of monitoring police, fire, or emergency calls because such radio devices were apparently involved in Olson's previous offenses. He imposed the restriction after consulting with the law officers familiar with Olson's case.

The governmental immunity rule stated in *Lister, supra,* was elaborated in *Scarpaci v. Milwaukee County,* 96 Wis. 2d 663, 686–87, 292 N.W.2d 816, 827 (1980). The *Scarpaci* court held that governmental immunity depends on the nature of the specific act on which liability is based, not on the general duties of the public officer. 96 Wis. 2d at 685, 292 N.W.2d at 826.

The *Scarpaci* court concluded that immunity attached to a medical examiner's decision to conduct an autopsy but not to the manner in which it was carried out. The court distinguished between "governmental discretion" and the carrying out of a decision based on such discretion. The court held that immuni-

ty attaches only to a decision involving governmental discretion and not to how it is carried out, even if carrying it out involves discretion. The court quoted with approval from 4 *Restatement (Second) of Torts* sec. 895D comment d at 413 (1977), to the effect that governmental immunity applies only to conduct which involves the determination of fundamental governmental policy, is essential to the realization of that policy, and requires the exercise of basic policy evaluation, judgment and expertise. 96 Wis. 2d at 687, 292 N.W.2d at 827.[1]

Other courts have held that immunity attaches to the decision to parole or grant probation but not to parole or probation supervision. *See, Payton v. United States,* 679 F.2d 475, 481–83 (5th Cir. 1982) (immunity attaches to decision to parole prisoner but not to application of parole guidelines to individual cases); *Johnson v. State,* 447 P.2d 352 (Cal. 1968) (immunity attaches to decision to parole but not to failure to warn foster parents with whom paroled youth was placed); *Cairl v. State,* 323 N.W.2d 20, 23 (Minn. 1982) (immunity attaches to decision to release a dangerous delinquent but not to his supervision following release); *Sterling v. Bloom,* 723 P.2d 755, 776 (Idaho 1986) (immunity attaches to setting terms for probation but not to their execution or performance); *Doe v. Arguelles,* 716 P.2d 279 (Utah 1985) (no immunity for

[1]*See also Gordon v. Milwaukee County,* 125 Wis. 2d 62, 370 N.W.2d 803 (Ct. App. 1985) (decision of Director of County Mental Health facility to release potentially suicidal patient is protected by governmental immunity but diagnostic procedure followed by government psychiatrists not protected), and *Protic v. Castle Co.,* 132 Wis. 2d 364, 392 N.W.2d 119 (Ct. App. 1986) (postsurgical medical care by state doctor is not protected by governmental immunity).

negligence in monitoring prescribed treatment to released youth after discretionary decision to provide such treatment). *See also Division of Corrections v. Neakok,* 721 P.2d 1121, 1132–35 (Alaska 1986) (whether parole board is immune not decided but parole officer not immune when establishing parole plan and conditions for an individual parolee).

We disagree with these decisions to the extent that they suggest that parole agents have no governmental immunity for all decisions made when supervising a parolee. The controlling factor is the categorization of the specific decision rather than the categorization of the duties of the public officer. *Scarpaci,* 96 Wis. 2d at 685, 292 N.W.2d at 826–27.[2]

We agree, however, that governmental immunity does not attach to a parole agent's decision merely because it involves discretion. The question is whether the decision involved the type of judgment and discretion which rises to governmental discretion, as opposed to professional or technical judgment and discretion. *Scarpaci,* 96 Wis. 2d at 686, 292 N.W.2d at 827. In short, the nature of the decision, not who makes it or how it is made, determines whether it involves governmental discretion and immunizes the decisionmaker from liability.[3]

---

[2]We also reject the holding in *Division of Corrections v. Neakok,* 721 P.2d 1121, 1132–35 (Alaska 1986), that a parole officer is not immune from liability when establishing a preparole plan and parole conditions. See footnote 6.

[3]For these reasons, we cannot rely on *Lifer v. Raymond,* 80 Wis. 2d 503, 259 N.W.2d 537 (1977), a pre-*Scarpaci* decision holding that a state road test examiner was immune from liability based on his having passed an overweight applicant for a driver's license. We need only note that the nature of the examiner's decision differs markedly from that of the parole agent's.

Before determining the nature of the parole agent's decision, we must first decide whether parole itself involves governmental discretion. This is necessary for two reasons. First, if the decision to parole is not an act of governmental discretion, then any decision during parole supervision is unlikely to attain that status. Second, the nature of the decision to parole is pertinent to the question whether a particular decision by a parole agent during supervision involved governmental discretion.

■

We easily conclude that the decision to parole a prisoner involves governmental discretion and that governmental immunity attaches to it. This is true whether a particular parole is discretionary or mandatory.[4]

Without attempting to describe the present system in detail and the modifications and exceptions which must be followed, a Wisconsin inmate "may" be paroled under sec. 57.06(1), Stats., when twenty-five percent of a sentence (or twenty years in the case of a life term) has been served. An inmate is entitled to mandatory release on parole when two-thirds of the sentence has been served, unless the inmate is serving a life term. Secs. 53.11(1) and (1m), Stats.

The decision to grant discretionary parole requires the exercise of governmental discretion, as the *Scarpaci* court used the term. Except for the qualified prohibition against paroling a prisoner "until the

---

[4]Because Olson was granted discretionary parole, our references to mandatory parole are unnecessary except for the fact that Wis. Adm. Code, sec. HSS 328.04, pertaining to supervision of parolees and probationers and cited later in this opinion, makes no distinction between inmates released and discretionary and mandatory parole.

department is satisfied that suitable employment has been secured for him, unless otherwise provided for by the department," sec. 57.06(2), Stats., the statute leaves the decision to the department's discretion. The department has published no preestablished guidelines governing the grant or denial of discretionary parole in the Wisconsin Administrative Code. The decision to parole a particular prisoner requires a set of fundamental governmental policies regarding penal philosophy, rehabilitation of prisoners and protection of the public generally. It requires careful evaluation, judgment and the exercise of expertise. Because the decision to grant discretionary parole is an exercise of governmental discretion, the public officers who make the decision are immune from tort liability based on it. *Scarpaci,* 96 Wis. 2d at 687, 292 N.W.2d at 827.

Mandatory parole is a matter of entitlement rather than discretion when the inmate has served the requisite period of time, subject to modifications, as provided in sec. 53.11(1), Stats. The legislative decision to create mandatory parole, however, was itself a high exercise of governmental discretion, within the meaning of *Scarpaci, supra.* That decision had to be based upon fundamental governmental policies regarding penal philosophy, rehabilitation and protection of the public.

■
Having concluded that the decision to grant discretionary or mandatory parole is an exercise of governmental discretion, we reach the nature of a parole agent's decision to allow a parolee to drive. We start with the premise that if a parole agent shares or participates in the decision to parole, then the agent's decision in that regard involves governmental discretion. We conclude that the decision to parole necessar-

ily includes the imposition of terms and conditions for parole. We conclude that an agent shares in the parole decision to the extent that the agent sets terms and conditions for parole. We further conclude that whether to allow a parolee to drive is a decision setting a term and condition of parole, and we hold that governmental immunity attaches to it. We reason as follows.

The decision to parole is more than the decision merely to release a prisoner. Parole is a release from penal confinement on terms and conditions. Those terms and conditions limit the release. They define the circumstances under which parole continues and the absence of which may cause revocation of parole. It is impossible to grant parole except on terms and conditions. The decision to parole is not merely to release a prisoner but is necessarily a decision as to the terms and conditions of the release.

This conception of discretionary parole as including terms and conditions is implicit in sec. 57.06(3), Stats., which provides in part, "Every paroled prisoner remains in the legal custody of the department unless otherwise provided by the department. If the department alleges that any condition or rule of parole has been violated by the prisoner, the department may take physical custody of the prisoner for the investigation of the alleged violation." The same conception is implicit in the mandatory parole statutes. Section 53.11(6), Stats., provides that an inmate released on mandatory parole "is subject to all conditions and rules of parole until the expiration of [his or her] sentence ...."

The department has prepared standard terms and conditions attaching to parole. The standard terms and conditions, described as "rules," appear in Wis.

Adm. Code, sec. HSS 328.04(3).[5] As provided by the lead paragraph of that regulation, the parole agent must meet with the parolee to review those rules when parole begins. The lead paragraph authorizes

[5]Wisconsin Adm. Code, sec. HSS 328.04(3), provides as follows:

When probation or parole begins, an agent shall meet with a client to review or develop written rules and specific conditions of the client's supervision, or both. These rules require that the client shall:

(a) Avoid all conduct which is in violation of state statute, municipal or county ordinances or which is not in the best interest of the public welfare or his or her rehabilitation;

(b) Report all arrests or police contacts to an agent within 72 hours;

(c) Make every effort to accept the opportunities and counseling offered by supervision;

(d) Inform the agent of his or her whereabouts and activities as directed;

(e) Submit a written monthly report and any other such relevant information as may be required;

(f) Secure advance approval from an agent for a change of residence or employment, or in the case of emergency, notify an agent of the change within 72 hours;

(g) Obtain the advance permission of an agent and a travel permit before leaving the state;

(h) Obtain advance permission from an agent to purchase, trade, sell, or operate a motor vehicle;

(i) Secure advance approval from an agent to borrow money or purchase on credit;

(j) Obtain advance permission from an agent to purchase, possess, own or carry a firearm or other weapon. An agent may not grant a client permission to possess a firearm if the client is prohibited from possessing a firearm under s. 941.29, Stats., or federal law;

(k) . Make himself or herself available for searches or tests ordered by the agent including but not limited to urinalysis, breathalyzer, and blood samples or search of residence or any property under his or her control;

(l) Follow any specific rules that may be issued by an agent to achieve the goals and objectives of this chapter. The rules may be modified at any time as appropriate.

the parole agent to create additional rules applicable to a particular parolee. The same paragraph expressly authorizes the agent to "develop written rules and specific conditions of the client's supervision ...." The context shows that rules and conditions developed by the agent have the same force and effect as the department's standard parole rules.

Five of the department's standard rules require the parolee to obtain the agent's approval or permission before engaging in certain undertakings. These rules require the parolee to obtain the agent's advance approval or permission to change residence or employment, to leave the state, to purchase, trade, sell or operate a motor vehicle, to borrow or buy on credit and to acquire a weapon. Wis. Adm. Code, secs. HSS 328.04(3)(f)-(j). When an agent grants or withholds such permission or approval, the agent develops a term or condition of the release or, in the words of the regulation, a rule. Again, the context shows that the agent's grant or denial of such approval or permission has the same force and effect as the department's standards.

It follows that the parole agent's authority to develop parole rules, including the authority to grant or withhold approval or permission for certain acts, includes the power to set the terms and conditions for a particular parole. The agent's exercise of that power necessarily involves governmental discretion, in the same sense that the department exercised governmental discretion when it established standard terms and conditions for parole.[6]

---

[6]*Division of Corrections in Neakok,* 721 P.2d 1121, 1134 (Alaska 1986), concluded that governmental immunity does not attach to the decision of a parole officer to impose special

Since a parolee's operation of a motor vehicle requires advance permission from the parole agent, Wis. Adm. Code, sec. HSS 328.04(3)(h), the agent in the case before us exercised governmental discretion when granting that permission to Olson. Because government immunity attaches to a public official's exercise of government discretion, *Scarpaci,* 96 Wis. 2d at 687, 292 N.W.2d at 827, the agent is immune from tort liability to the plaintiff, C.L.

C.L. nevertheless contends that governmental immunity should not attach to the parole agent's decision. She asserts that the decision violated the public policy of this state regarding the operation of motor vehicles by persons in Olson's position. We conclude that the statutes on which C.L. relies contain no absolute policy against such operation of a motor vehicle and have not been shown to apply.

C.L. relies first on sec. 343.06(11), Stats., which provides that the Department of Transportation shall not issue a driver's license to any person who was convicted of an offense specified under the sexual assault statute, sec. 940.225, Stats., or convicted under sec. 944.12, Stats., enticing a child under the age of eighteen into a motor vehicle for immoral purposes. While Olson was convicted under the sexual assault statute, there is no showing that he was convicted under sec. 944.12. Moreover, the prohibition in sec. 343.06(11) applies only "when the sentencing court makes a finding that issuance of a license will be inimical to the public safety and welfare." No showing

conditions of parole, apparently on the theory that the decision merely "implemented a policy already devised by the Parole Board." The *Neakok* rationale is inapplicable in Wisconsin.

has been made that the sentencing court made that finding.

C.L. also relies on sec. 343.31(1)(c), Stats., which provides that the department of transportation shall revoke a person's operator's license on receiving a record showing that the person has been convicted for any felony in the commission of which a motor vehicle was used. Section 343.31(4) allows reinstatement of the license on recommendation by the Department of Health and Social Services and approval by the court of convictions. This record fails to show whether Olson's license was in fact revoked or whether his license was reinstated.

Consequently, C.L. has not shown that the parole agent's decision violated the public policy of this state. We therefore need not determine whether, had the agent's decision violated such a policy, that violation would deprive the agent of governmental immunity.

C.L. having submitted opposing affidavits executed by her attorney, we turn to them to determine whether they contain evidentiary facts and other proof which show a factual issue exists and a trial is necessary. *In re Cherokee Park Plat,* 113 Wis. 2d at 116, 334 N.W.2d at 583. The opposing affidavits pertain to the public policy considerations just discussed, to the parole agent's negligence in granting permission to drive and to the agent's admissions on deposition relevant to other acts alleged to constitute negligent supervision of Olson.

The public policy issues need no further discussion. The specific and only negligence charged in the complaint is the agent's granting Olson permission to drive. The agent's affidavit establishes a prima facie case of immunity with regard to that negligence. The

opposing affidavits fail to show that factual issues exist regarding that immunity.

Because the other acts of negligence described in C.L.'s opposing affidavits are not alleged in her complaint, we do not reach them.[7] Summary judgment methodology does not allow enlargement of the issues beyond those framed by the pleadings. See the standard summary judgment methodology in the many cases reciting it, such as *In re Cherokee Park Plat, supra.* Were the rule otherwise, plaintiff's affidavit opposing a defendant's motion for summary judgment would itself constitute a complaint which must be answered and require a new motion for summary judgment.

■

We conclude that C.L.'s affidavits in opposition to the parole agent's motion for summary judgment fail to show that factual disputes exist which require a trial.

A final matter requires our attention. C.L. contends because the legal issues are complicated, the trial court abused its discretion by granting summary judgment dismissing her complaint. C.L. refers us to *Coffey v. Milwaukee,* 74 Wis. 2d 526, 247 N.W.2d 132 (1976). The *Coffey* court held that the trial court properly overruled a demurrer when the dispute involved public policy considerations and required the balancing of policy factors in determining whether the City of Milwaukee and city building inspector were

---

[7]C.L. did not move to amend her complaint. Whether the trial court should allow her to do so is not before us. She does not contend that we should treat her attorney's affidavits in opposition to summary judgment as itself having amended her complaint.

immune from liability for a faulty building inspection. The *Coffey* court reasoned that a sufficient factual basis had not been presented at the demurrer stage for the court to resolve the public policy issues involved. *Coffey* is not in point. The law of governmental immunity, as developed in *Scarpaci, supra,* no longer requires a balancing of policy considerations, at least in the case before us.

Application of the governmental immunity rule is seldom simple. Summary judgment methodology, however, no longer includes the question whether the trial court's ruling was an abuse of discretion. As pointed out in *Wright v. Hasley,* 86 Wis. 2d 572, 577–79, 273 N.W.2d 319, 322–23 (1979), since the supreme court modified summary judgment procedure in 1976, *see* 67 Wis. 2d 585, 630–31, whether to grant or deny summary judgment is no longer discretionary. Section 802.08(2), Stats., provides that summary judgment "shall" be rendered, absent a genuine issue of material fact. "The existence of a new or difficult issue of law does not, in and of itself, render the summary judgment mechanism inappropriate," *Maynard v. Port Publications, Inc.,* 98 Wis. 2d 555, 569, 297 N.W.2d 500, 507 (1980).

The question before us is whether, on the undisputed facts disclosed in the affidavit supporting the parole agent's motion, the decision to allow Olson to operate a motor vehicle was an exercise of governmental discretion. Because the agent's affidavit established a prima facie case for that defense, and the opposing affidavits fail to show that disputed issues of material fact exist regarding that defense, the agent is

entitled to summary judgment dismissing the complaint.

We conclude that the trial court properly granted summary judgment dismissing the complaint.

*By the Court.*—Order affirmed.

SUNDBY, J.  (*dissenting*). C.L.'s affidavits establish that Hohlstein is not entitled to judgment as a matter of law. Therefore, I dissent.

C.L.'s complaint alleged that Hohlstein was negligent in failing to deny to Olson the right to operate a motor vehicle and in failing to restrict Olson to operating a motor vehicle only for purposes of employment. The trial court granted Hohlstein's motion for summary judgment on the ground that he is immune from liability because these were discretionary decisions.

C.L. submitted two affidavits in opposition to Hohlstein's motion for summary judgment. One of the affidavits was based upon the deposition of Hohlstein. These affidavits alleged that Hohlstein negligently supervised Olson, and detailed his allegedly negligent acts. Had these allegations been included in C.L.'s complaint, the complaint would have stated a cause of action because these acts were, arguably, ministerial. The trial court did not consider the effect of these affidavits or of Hohlstein's deposition. The majority states:

> Because the other acts of negligence described in C.L.'s opposing affidavits are not alleged in her complaint, we do not reach them. Summary judgment methodology does not allow enlargement of the issues beyond those framed by the pleadings. (Footnote omitted.)

241

Majority opinion at 239.

I do not believe this is the law. Section 802.08(2), Stats., provides:

> The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, *together with the affidavits,* if any, *show* that there is no genuine issue as to any material fact and *that the moving party is entitled to judgment as a matter of law.* (Emphasis added.)

A trial court does not review the supporting and opposing papers solely to determine whether there are disputed issues of material fact but to determine whether either party is entitled to judgment as a matter of law. Here, C.L.'s affidavits alleged a cause of action, supported by facts, which was not subject to Hohlstein's immunity defense. On review, we are entitled to "reach" and consider Hohlstein's acts of negligence described in C.L.'s affidavits.

If C.L.'s affidavits and Hohlstein's deposition are considered, Hohlstein is not entitled to judgment as a matter of law. I believe sec. 802.08(2), Stats., required that the trial court consider these documents. Wisconsin's civil procedure code,

> reflects a determination that the resolution of legal disputes should be made on the merits of the case rather than on the technical niceties of pleading. The "notice" pleading rules of the ... civil procedure code are intended to facilitate the orderly adjudication of disputes; pleading is not to become a "game of skill in which one misstep by counsel may be decisive of the outcome."

242

*Korkow v. General Cas. Co. of Wisconsin,* 117 Wis. 2d 187, 193, 344 N.W.2d 108, 111–12 (1984), quoting *Canadian Pac. Ltd. v. Omark-Prentice Hydraulics,* 86 Wis. 2d 369, 373, 272 N.W.2d 407, 409 (Ct. App. 1978).

We are not rigidly bound by the pleadings. "Pleadings are not an end in themselves but a means to the proper presentation of a case. Pleadings are to assist, not to deter, the disposition of the case on its merits." *State v. Peterson,* 104 Wis. 2d 616, 629, 312 N.W.2d 784, 790 (1981). Obviously, pleadings are followed by discovery. Discovery frequently will reveal facts not available to the pleader which support the stated cause of action or additional causes of action. If we allow a motion for summary judgment to "freeze" plaintiff's case, we have placed in the hands of skillful counsel a defense weapon which subverts the purpose of notice pleadings.

There do not appear to be any Wisconsin decisions as to the effect of a motion for summary judgment upon amendment of the complaint. Federal decisions construing procedural counterparts to Wisconsin's rules of civil procedure are, however, persuasive. *Wilson v. Continental Insurance Cos.,* 87 Wis. 2d 310, 316, 274 N.W.2d 679, 682 (1979). Section 802.08(2), Stats., "is virtually identical to Federal Rule 56(c)." Judicial Council Committee's Note, 1974, 67 Wis. 2d at 632.

The trial court should have treated C.L.'s complaint as amended by the affidavits or, at least, should not have granted summary judgment against C.L. without allowing her to amend her pleadings. In a dictum the Court of Appeals for the Second Circuit stated:

> We do not commit ourselves ... as to the proposition that on a motion for summary judgment affidavits going beyond the complaint can under no circumstances be considered. The judgment finally disposes of the action, and if facts appear in affidavits which would justify an amended complaint, there may be ground for treating the complaint as though it were already amended to conform.

*Seaboard Terminal Corp. v. Standard Oil Co.,* 104 F.2d 659, 660 (2d Cir. 1939).

Similarly the trial court should allow amendments to the pleadings even when a motion for summary judgment has been filed. 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice,* para. 56.10, p. 56–170–71 (2d ed. 1987) states:

> Since a summary judgment is an adjudication on the merits and because of Rule 15, it is the duty of the trial court freely to allow amendments to the pleadings, unless the application to amend smacks of dilatory tactics or in some other respect fails to further justice. The general admonition has been stated by Judge Clark in *Rossiter v. Vogel* [134 F.2d 908, 912 (2d Cir. 1943)]:
>
> "where facts appear in affidavits upon motion for a summary judgment which would justify an amendment of the pleadings, such amendment should not be prevented by the entry of a final judgment."
>
> Indeed at times it will be feasible and desirable to treat the pleading as though it were amended to conform to the facts set forth in the affidavits.

244

It has been stated: "[I]t is now settled that the process of amendment may be *initiated* by presentation of an issue for the first time in a motion for summary judgment. 10 C. Wright & A. Miller, Federal Practice and Procedure, sec. 2722 at 477 n.22 (1973)." *In re Zweibon,* 565 F.2d 742, 747 n.20 (D.C. Cir. 1977) (other citations omitted). *See also Baker v. Chicago, Fire & Burglary Detection, Inc.,* 489 F.2d 953, 955 n. 3 (7th Cir. 1973) (where a summary judgment motion is supported by matters outside the pleadings, the court could deem the pleadings conformed to the proof offered).

It was not appropriate for the trial court to grant a summary judgment without considering matters raised in C.L.'s affidavits. "The issue having been pressed, the court should not have granted summary judgment against appellant without affording him the opportunity to amend his pleadings." *Kulkarni v. Alexander,* 662 F.2d 758, 763 (D.C. Cir. 1978) (citation omitted). *Moore's* states: "[A] complaint should not be summarily dismissed if there is reasonable ground for the belief that in the reframing of the complaint a good cause of action may be stated." 6 *Moore's Fed. Prac., supra,* pp. 56–173. *See also Wise v. McCarty Aniline & Extract Co.,* 9 F.R.D. 170, 171 (D.N.J. 1949).

In *Freeman v. Marine Midland Bank-New York,* 494 F.2d 1334, 1338–39 (2d Cir. 1974), the court held that on a motion to dismiss treated as a motion for summary judgment under Rule 56, the plaintiff's affidavit opposing the motion to dismiss should have been considered in testing the sufficiency of the plaintiff's pleadings, as well as in testing whether a triable issue of fact existed. *Johnson v. Mateer,* 625 F.2d 240, 242 (9th Cir. 1980), states:

The district court should have construed the affidavit as a request pursuant to rule 15(b) of the Federal Rules of Civil Procedure to amend the pleadings out of time and should have determined whether, based on the contents of the affidavit read with the complaint, triable issues of fact existed. (Citation omitted.)

*See also National Agr. Chemicals Ass'n v. Rominger,* 500 F. Supp. 465, 473 (E.D. Calif. 1980) ("When deciding a motion for summary judgment the court may evaluate not just the issues presently tendered by the pleadings but those which can reasonably be raised in an amended pleading.").

The majority appears to leave open the possibility that the trial court could entertain a motion by C.L. to amend her complaint. Majority opinion at 239 n. 7. I agree that the trial court has the power to grant C.L. leave to amend her complaint even though summary judgment has been granted. *Hartmann v. Time,* 64 F. Supp. 671, 680 (E.D. Penn. 1946) (if an amendment is justified it ought not to be prevented by entry of a final summary judgment on defendant's motion), *vacated on other grounds,* 166 F.2d 127 (3rd Cir. 1948). Whether such leave will be granted is in the discretion of the trial court if the time for amendment as a matter of course has run. Sec. 802.09(1), Stats. However, I believe it is inefficient to interpose appellate review between consideration of a motion for summary judgment and a motion to amend a pleading to state a claim. Hopefully, future trial practice will defer the filing and deciding of motions for summary judgment at least until the completion of pre-trial discovery has allowed the parties time to frame all of the issues by the pleadings. Future trial court practice should include in the summary judgment methodolo-

246

gy consideration of whether affidavits filed in opposition to a motion for summary judgment, read with the complaint or pleading which states a claim, raise triable issues of fact.