William HARMANN, Jr., William Harmann, Sr., Linda C. Harmann, Plaintiffs-Appellants,

v.

Neil SCHULKE, Bernard H. Schulke, Milwaukee Mutual Insurance Company, Cherie Hadley, The Continental Insurance Company, John Hildebrandt, Home Mutual Insurance Company, Town of Farmington, Kim Grant, James and Mary Grant, David Grant, American Family Mutual Insurance Company, Maureen Schulke and Milwaukee Mutual Insurance Company, Defendants,

COUNTY OF WAUPACA, Town of Dayton, General Casualty Insurance Company, Defendants-Respondents.†

Court of Appeals

*No. 87–1289. Argued July 21, 1988.—Decided October 26, 1988.*

(Also reported in 432 N.W.2d 671.)

---

† Petition to review pending. This petition was not disposed of at the time the volume went to press. Its disposition will be reported in a later volume.

---

For the plaintiffs-appellants there were briefs by *Russell T. Golla* and *Anderson, Shannon, O'Brien, Rice & Bertz,* of Stevens Point, and oral argument by *Russell T. Golla.*

For the defendants-respondents Town of Dayton and General Casualty Insurance Company, there was a brief by *Peter M. Farb* and *Gabert & Williams* of Appleton, and oral argument by *Peter M. Farb.*

For the defendants-respondents County of Waupaca and General Casualty Insurance Company, there was a brief by *Thomas N. Harrington* and *Rodney D. DeKruif* and *Cook & Franke, S.C.,* of Milwaukee, and oral argument by *Thomas N. Harrington.*

Before Dykman, Eich and Sundby, JJ.

DYKMAN, J.  William Harmann, Jr.,[1] appeals from orders granting summary judgment dismissing his claims against the Town of Dayton, General Casualty Insurance Company and Waupaca county. Harmann was injured when an automobile in which he was a passenger failed to negotiate a curve on Rural Road in the town of Dayton, located in Waupaca county. His complaint alleged that Dayton and Waupaca were negligent in failing to post a curve warning sign and in failing to post a required forty-five mile per hour speed sign.

The issues are: (1) whether Dayton and Waupaca are immune from suit pursuant to sec. 893.80(4), Stats.;[2] (2) whether Dayton's failures to place a curve warning sign or to cut tall grass on the shoulder of Rural Road rendered that road defective within the meaning of sec. 81.15, Stats.,[3] and (3) whether Dayton's failure to post a forty-five mile per hour sign on a rustic road provides a basis for liability for Harmann's

---

[1]Harmann's mother and father also appeal, but we refer only to William for the sake of simplicity.

[2]Section 893.80(4), Stats., provides:

> No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

[3]Section 81.15, Stats., provides in relevant part:

> If damages happen to any person or his or her property by reason of the insufficiency or what of repairs of any highway which any town ... is bound to keep in repair, the person sustaining the damages has a right to recover the damages from the town ....

injuries. We conclude that: (1) Dayton and Waupaca are immune from suit pursuant to sec. 893.80(4); (2) Harmann has no valid claim under sec. 81.15; and (3) Dayton's failure to post forty-five mile per hour signs on a rustic road cannot provide a basis for liability for Harmann's injuries. Therefore we affirm.

Summary judgment is governed by sec. 802.08, Stats. We apply summary judgment methodology, outlined in *In re Cherokee Park Plat*, 113 Wis. 2d 112, 115–116, 334 N.W.2d 580, 582–83 (Ct. App. 1983), in the same manner as the trial court. We need not repeat that methodology here.

Harmann's complaint states a cause of action grounded on negligence. Dayton and Waupaca deny any negligence or that they had caused any injury to Harmann. Dayton and Waupaca also assert the affirmative defense of governmental immunity under sec. 893.80(4), Stats. This section provides immunity to a governmental subdivision and its officers or agents for acts done in an official capacity by the governmental subdivision's agents or officers, unless the agent or officer negligently performs a purely ministerial duty or if the complained of conduct is malicious, willful and intentional. *C.L. v. Olson*, 143 Wis. 2d 701, 710–11, 422 N.W.2d 614, 617 (1988).

Because Dayton's and Waupaca's answer raises factual issues regarding negligence, causation and immunity, we turn to the affidavits supporting Dayton's and Waupaca's motions to determine whether they make prima facie cases for summary judgment. In other words, they must show defenses which would defeat Harmann's claims. *In re Cherokee Park Plat*, 113 Wis. 2d at 116, 334 N.W.2d at 583. If Dayton and Waupaca show prima facie cases for immunity, and

852

Harmann does not rebut those cases, we need not reach the negligence and causation issues. We first deal with Dayton's motion for summary judgment.

## DAYTON'S SUMMARY JUDGMENT MOTION

According to an affidavit submitted by the Dayton town chairman in support of Dayton's motion for summary judgment, Dayton participated in a 1974 state signing survey. As a result of that survey, several changes were suggested relating to signs on Rural Road. However, no sign was recommended for the curve where the accident occurred. In addition, the Dayton town board members, having driven on the curve from time to time, did not think the curve needed a sign. Based on the survey and personal experience, Dayton exercised its discretion in not placing the curve sign.

The question of whether sec. 893.80(4), Stats., provides immunity to a government subdivision or its agents requires statutory interpretation. We review such questions de novo. *E.S. v. Seitz,* 141 Wis. 2d 180, 184, 413 N.W.2d 670, 672 (Ct. App. 1987).

a. *Immunity Under Sec. 893.80(4), Stats.*

Harmann argues as follows: Sections 84.02(4)(e) and 349.065, Stats., mandated the adoption of the Manual on Uniform Traffic Control Devices (MUTCD); the Manual required Dayton to place a warning sign at the curve in question on Rural Road; Dayton had a statutory duty to place the warning sign; failure to place the statutorily mandated sign is not immunized by sec. 893.80(4), Stats.

Section 84.02(4)(e), Stats., provides:

> The department shall adopt a manual establishing a uniform system of traffic control devices

for use upon the highways of this state. The system shall be consistent with and, so far as practicable, conform to current nationally recognized standards for traffic control devices.

Section 349.065, Stats., provides in part:

Local authorities shall place and maintain traffic control devices upon highways under their jurisdiction to regulate, warn, guide or inform traffic. The design, installation and operation or use of new traffic control devices placed and maintained by local authorities after the adoption of the uniform traffic control devices manual under s. 84.02(4)(e) shall conform to the manual.

The Department of Transportation adopted the Manual on September 19, 1974. *Foss v. Town of Kronenwetter,* 87 Wis. 2d 91, 103 n. 26, 273 N.W.2d 801, 808 (Ct. App. 1978). However, the Manual must be read in light of *Dusek v. Pierce County,* 42 Wis. 2d 498, 167 N.W.2d 246 (1969). In *Dusek,* the supreme court stated:

It is apparent from a review of these cases that whether or not to place a stop sign, a warning sign, or a yield sign at the approach to a county trunk highway is a legislative decision that must be undertaken by the county board and not by the courts. ... Although there is a duty, as spelled out in *Firkus,* to maintain signs once they are placed, there is no duty upon the legislative body of a government to place them at a highway intersection in the first place.

*Id.* at 506, 167 N.W.2d at 250.

In *Firkus v. Rombalski,* 25 Wis. 2d 352, 358, 130 N.W.2d 835, 838 (1964), relied on in *Dusek,* the court said:

> The town had no affirmative duty to erect the sign in the first instance, but having done so it was incumbent upon it to properly maintain the sign as a safety precaution to the traveling public which has the right to rely on its presence.

█

The question therefore is whether the department's adoption of the Manual gave Dayton an "affirmative duty to erect the [warning] sign in the first instance." We think not. The Manual, adopted by statute in its entirety, provides in its introduction: "It is the intent that the provisions of this Manual be standards for traffic control devices installation, but not a legal requirement for installation." Sec. 1A–4, MUTCD. The Manual does not mandate the erection of any sign.[4]

[4]Harmann also makes the following argument: Dayton made the legislative decision to place all signs on Rural Road in conformance with the Manual when Dayton decided to participate in a federally funded survey; the Manual required the initial placement of the warning sign; Dayton did not place the warning sign; Dayton is therefore negligent. However, because we have concluded that the Manual does not mandate the initial placement of warning signs, this argument fails.

Harmann claims *Foss v. Town of Kronenwetter,* 87 Wis. 2d 91, 273 N.W.2d 801 (Ct. App. 1978), also supports his position, but *Foss* is distinguishable. There the plaintiff claimed the town was negligent because it had bolted a "dead-end" sign to the back of a stop sign located on the left shoulder. *Id.* at 95, 273 N.W.2d at 803–04. This contravened the Manual, which required all warning signs to be on separate posts on the right shoulder. *Id.* at 103–04, 273 N.W.2d at 807–08. Because the Manual was not then in effect, the *Foss* court concluded that the placement of the sign on the left side of the road, instead of the right side, was within the town's discretion. *Id. Foss* implied that if the Manual were in effect, sign placement must then conform to the Manual's specifications. *Foss* does not support Harmann's theory that the Manual mandates not

Harmann also argues that, even if the Manual and the statutes allow for the exercise of discretion, Dayton exercised that discretion "when it decided to participate in the federally funded program for the purpose of having all of its roads, including Rural Road, signed in accordance with the Manual." However, since Dayton has no duty to place a curve warning sign, its failure to place the sign can provide no basis for liability. "At the most, what the plaintiff spells out herein is the [town's] failure to exercise the legislative function." *Dusek*, 42 Wis. 2d at 506, 167 N.W.2d at 250.

b. *No Valid Claim Under Sec. 81.15, Stats.*

Section 81.15, Stats., allows a person injured due to an "insufficiency or want of repairs of any highway which any town ... is bound to keep in repair" to sue the town for damages. Harmann claims damages under this section because Dayton's failures to place a curve warning sign and to cut the tall grass on the curve's shoulder rendered Rural Road defective under sec. 81.15. The question of whether the lack of a warning sign or the presence of tall grass on a road's shoulder are insufficiencies within the meaning of sec. 81.15 requires statutory interpretation. We review such questions de novo. *E.S.*, 141 Wis. 2d at 184, 413 N.W.2d at 672. We reject Harmann's arguments on this issue.

The Wisconsin Supreme Court has described the scope of negligence actionable under sec. 81.15,

only where and how the sign will be placed, but also the original decision as to whether the sign should be placed at all. "In the absence of a statute or regulation that mandates a sign placement, whether or not to post a ... warning ... sign at a given location is a matter that requires the exercise of judgment." *Hjerstedt v. Schultz*, 114 Wis. 2d 281, 285, 338 N.W.2d 317, 319 (Ct. App. 1983). Such a decision is protected by sec. 893.80(4), Stats., immunity.

[Stats.,] as limited to that involving physical defects existing in the traveled surface of the highway or absence or insufficiency of warnings of such defects, and has expressly withdrawn language that any defect in the maintenance or operation of traffic signals was an insufficiency or want of repair.

*Foss,* 87 Wis. 2d at 100, 273 N.W.2d at 806 (footnotes omitted). In *Loehe v. Fox Point,* 253 Wis. 375, 379, 34 N.W.2d 126, 128 (1948), the court noted that the defendant had no duty to warn of a right angle turn in the roadway. The curve in Rural Road was not an insufficiency within the meaning of sec. 81.15.

With regard to the tall grass issue, Harmann did not allege this defect in his complaint or amended complaints. Under summary judgment methodology, we must construe a complaint liberally, and accept factual allegations, or the reasonable inferences from them, as true. *C.L.,* 143 Wis. 2d at 721, 422 N.W.2d at 622. Harmann raised the tall grass issue in his affidavit submitted in opposition to summary judgment, and requests that we construe the complaint to include this theory of negligence. However, "[e]ven liberally construed, the complaint does not support such a distinct theory of negligence." *Id.* at 721 n. 13, 422 N.W.2d at 621. The complaint and amended complaints allege that Dayton and Waupaca "were negligent in failing to mark the said curve with an appropriate curve sign and, further, were negligent in failing to post Rural Road with the required 45 m. p. h. speed sign." Summary judgment methodology precludes us from considering the tall grass claim. *Id.*[5]

---

[5]Harmann also alleges he made a motion to amend the pleadings on this issue at the hearing on Dayton's summary

### c. *No Liability For Failure to Post Rustic Road*

The question of whether Dayton can be liable to Harmann for failing to post forty-five mile per hour signs on a designated rustic road requires statutory interpretation. We review such questions de novo. *E.S.*, 141 Wis. 2d at 184, 413 N.W.2d at 672.

Harmann points out that the portion of Rural Road involved in this case was designated a rustic road in February 1982. Section 346.57(4)(k), Stats., provides for a speed limit of "45 miles per hour on any highway designated as a rustic road ...." Wisconsin Adm. Code, sec. Trans-RR 1.14(2) provides that "official signs giving notice of the speed limit shall be posted by the maintaining authority for the speed limit to be in effect." The "rustic road" signs were posted in July 1982, some weeks after Harmann's accident. Harmann argues that Dayton, as the maintaining authority for this section of Rural Road, violated its duty to post the speed signs after the road

judgment motion. He also refers us to sec. 802.09(2), Stats., which deals with the amending of pleadings to conform to the evidence. It is undisputed that since Harmann made this motion more than six months after the filing of the summons and complaint, he could only amend the pleadings "by leave of court." Sec. 802.09(1). "[L]eave shall be freely given at any stage of the action when justice so requires." *Id.* Under this section, amendment of the complaint is within the discretion of the trial court. *State v. Peterson*, 104 Wis. 2d 616, 634, 312 N.W.2d 784, 793 (1981). Harmann does not argue the trial court abused its discretion by denying Harmann's motion to amend the complaint, and we review this issue no further.

The dissent's position as to summary judgment methodology was considered and rejected in *C.L. v. Olson*, 143 Wis. 2d 701, 721, 422 N.W.2d 614, 621 (1988).

was designated "rustic." Harmann also argues that Dayton, by failing to post the proper speed signs, illegally increased the forty-five miles per hour speed limit to fifty-five miles per hour without the approval of the Transportation Department. Harmann concludes that Dayton's failure to abide by the relevant statutes and regulations constitutes negligence per se, and that the issue of whether this negligence caused Harmann's accident is for the jury.

We reject Harmann's argument. The purpose of a rustic road designation is to alert motorists to areas of singular beauty and to allow them to slow down and "smell the roses." It has nothing whatsoever to do with safety or with rectifying a dangerous situation. Wisconsin Adm. Code, sec. Trans-RR 1.04(1) sets out some of the qualifications a road must have before being designated "rustic":

> A rustic road has outstanding natural features along its borders such as rugged natural terrain, native wildlife and native vegetation, or includes open areas with rustic or agricultural vistas which, singly or in combination, set this road apart from other roads as being something unique and distinct.

Since safety factors have nothing to do with designating roads as "rustic," Dayton's failure to sign the road cannot be negligence per se, and cannot be a cause of Harmann's injury.

## WAUPACA'S SUMMARY JUDGMENT MOTION

We now turn to Waupaca's affidavits submitted in support of its summary judgment motion. According to Waupaca's highway commissioner's affidavit, the state of Wisconsin contracted with Waupaca to pro-

859

vide the manpower and equipment necessary to physically conduct the highway signing survey. After the completion of the project, Waupaca billed the state for its time and materials. The state exercised the final decision whether to recommend to Dayton the placement of any particular sign.

In affidavits submitted in opposition to Waupaca's motion, a traffic engineer claimed that the curve in question was not signed in accordance with the Manual. Harmann's attorney also filed an affidavit in which he claimed that Walter Ciura, Dayton town chairman, deposed that Waupaca had contracted with the state on May 8, 1975 to furnish and place signs on county trunk highways, town roads, and village streets. The contract provided in part:

> 6. *Signing, Item 90001.* The work under this item consists of furnishing and installing posts, regulatory and warning signs in conformity with the plans, standard specifications, special provisions, and the Wisconsin Manual of Traffic Control Devices. The signs to be installed are those identified in the County's inventory of regulatory and warning signs, which is on file in the office of the Governor's Highway Safety Coordinator.

Harmann's attorney also claims that Ciura deposed that Dayton had hired Waupaca to do the survey and the placement of the signs. Harmann asserts that Waupaca's highway department engineers negligently performed the task they undertook, which was to survey Dayton's roads and recommend the placement of signs in order to bring the signing of Rural Road into conformance with the Manual.

We have looked at the page of Ciura's deposition transcript relied upon as support for Harmann's attorney's assertion that Ciura claimed that Dayton

860

had hired Waupaca to do both the survey and the placement of the signs. We conclude it is not clear whether Ciura testified that Dayton, and not the state, hired Waupaca to do the survey. It is undisputed, however, that Waupaca billed the state for labor and equipment charges after Waupaca had completed the sign survey. The state and Waupaca then contracted on May 8, 1975 for Waupaca to furnish and install signs.

Harmann appears to argue that Waupaca operated as Dayton's agent in surveying the road and recommending signs. If that is so, Waupaca shares in Dayton's sec. 893.80(4), Stats., immunity as long as Waupaca's actions did not amount to the performance of a ministerial duty in which "nothing remain[ed] for judgment or discretion." *K.L. v. Hinickle,* 144 Wis. 2d 102, 108, 423 N.W.2d 528, 530 (1988). As we have concluded, the Manual does not dictate whether a sign will be placed, but merely provides installation criteria once the original placement decision has been made. Sec. 1A–4, MUTCD. In addition, the Manual provides: "Care should be taken not to install too many signs. A conservative use of regulatory and warning signs is recommended as these signs, if used to excess, tend to lose their effectiveness." Sec. 2A–6, MUTCD. This last provision required Waupaca to exercise its judgment whether to recommend the initial placement of the sign. This discretionary determination is protected even if mistaken. *See Hjerstedt v. Schultz,* 114 Wis. 2d 281, 287, 338 N.W.2d 317, 320 (Ct. App. 1983) (highway engineers' judgment that signing regulation did not apply to intersection is

protected by immunity even if mistaken).[6] Waupaca is therefore immune under sec. 893.80(4).[7]

---

[6]Harmann claims *Hjerstedt, supra,* is not controlling and that the reasoning in *Protic v. Castle Co.,* 132 Wis. 2d 364, 392 N.W.2d 119 (Ct. App. 1986) and *Gordon v. Milwaukee County,* 125 Wis. 2d 62, 370 N.W.2d 803 (Ct. App. 1985) is more compelling. We disagree. Both of these cases are distinguishable. *Protic* held that a state-employed doctor could be held liable for negligent postsurgical medical care because such care did not involve governmental discretion. 132 Wis. 2d at 370, 392 N.W.2d at 122. *Gordon* held that the factfinding portion of a mental health complex treatment director's designee's quasi-judicial decision not to order a person to be involuntarily committed to a mental institution was not protected by governmental immunity. 125 Wis. 2d at 67, 370 N.W.2d at 806. *Hjerstedt* is on point in that it deals with certain highway engineers' decision not to place an extra stop sign at an intersection. 114 Wis. 2d at 287, 338 N.W.2d at 320. In this case, Waupaca's engineers made a decision not to recommend placement of the curve warning sign. We see no reason not to follow *Hjerstedt.* The ultimate decision here, i.e., whether to recommend the curve warning sign's placement, is similar to the ultimate decision in *Gordon,* which was whether to commit a person to a mental institution involuntarily. 125 Wis. 2d at 67, 370 N.W.2d at 806.

In *Gordon,* the factfinding portion of the discretionary decision was not protected by immunity. *Id.* In this case, Harmann alleges that Waupaca was required to follow the Manual, and is negligent for not recommending the signs which the Manual required it to recommend. If this were so, Harmann would have a point, since discovering the signs which the Manual required would be similar to the unprotected factfinding portion of the quasi-judicial decision in *Gordon.* However, as we stated earlier, the Manual does not require the original placement of any sign, so this argument must fail. Since *Protic* did not involve a similar "two-step" decision, it is inapposite.

[7]Harmann claims that Dayton "hired [Waupaca] to perform the survey and erect the signs." Waupaca claims that the state administered the survey and that the state "contracted with

Harmann claims that if we conclude that government-employed engineers are not liable for their negligence while privately-employed engineers are so liable, we violate his constitutional right to equal protection. Harmann cites no legal authority for his argument, so we need not address it. *State v. Shaffer*, 96 Wis. 2d 531, 545–46, 292 N.W.2d 370, 378 (Ct. App. 1980). Were we to address this argument, Harmann would not prevail. Harmann's theory is that: (1) Waupaca contracted to recommend signs according to the Manual; (2) the Manual required the curve warning sign to be placed in the first instance; (3) therefore Waupaca's failure to recommend the curve warning

Waupaca County to provide the manpower and equipment physically necessary to conduct the survey." Waupaca claims that it billed *only* the state. Waupaca claims it made only preliminary recommendations, and that such "recommendations were to be reviewed and approved by engineers from the Wisconsin Department of Transportation. Final recommendations concerning whether to place any particular sign were reserved for the state, and made by the state." The state's final recommendation to Dayton, which Dayton accepted, did not include the placement of a curve warning sign at the curve in question.

In Harmann's reply brief, he states that "Waupaca County entered into a contract whereby it agreed to survey the town roads in the Township of Dayton...." Harmann neglects to clarify with whom Waupaca contracted. Harmann later claims that Waupaca's engineers "performed the survey and made engineering recommendations concerning sign placements in accordance with the Manual's provisions. Those recommendations were flyspecked by the state and submitted to the Township for approval." Here, Harmann seems to concede that the state was the contracting party with Waupaca, and not Dayton. Nevertheless, it is not necessary to resolve the conflict of whether the state or Dayton contracted with Waupaca to survey and recommend sign placements for Dayton. Because Waupaca was the agent for whichever entity, it shares in that entity's immunity.

sign is negligence. This theory fails because the Manual does not require the original placement of the sign.

*By the Court.*—Orders affirmed.

SUNDBY, J. (*dissenting*). For the reasons stated in my dissent in *C.L. v. Olson,* 140 Wis. 2d 224, 241–47, 409 N.W.2d 156, 163–165 (Ct. App. 1987) *aff'd,* 143 Wis. 2d 701, 422 N.W.2d 614 (1988), I dissent from that part of the majority opinion which holds that we may not consider Harmann's affidavits in determining whether the defendants are entitled to judgment as a matter of law. Our summary judgment methodology is contrary to sec. 802.08(2), Stats., and is a regression to specification pleading.