John BBB Doe, Plaintiff-Appellant,

v.

Archdiocese of Milwaukee, St. Mary's Congregation, and Father Jerome Lanser, Defendants-Respondents ,

Alias Insurance Company No. 1, and Alias Insurance Company No. 2, Defendants. [Case No. 94–0423]

John MMM Doe, Plaintiff-Appellant,

v.

Alias Insurance Company No. 1, Alias Insurance Company No. 2, Archdiocese of Milwaukee, St. Boniface Congregation, and Father Michael Neuberger, Defendants-Respondents. [Case No. 94–0695]

T.C., Plaintiff-Appellant,

v.

Archdiocese of Milwaukee, Reverend S. Joseph Collova, and St. James Catholic Church, Defendants-Respondents. [Case No. 94–2124]

J.J., Plaintiff-Appellant,

v.

Archdiocese of Milwaukee, Father Michael Neuberger, and St. Boniface Congregation, Defendants-Respondents. [Case No. 94–2128]

*See Callaghan's Wisconsin Digest, same topic and section number.

A.C., Plaintiff-Appellant,

v.

ARCHDIOCESE OF MILWAUKEE, Reverend William J. Effinger, and St. Francis Desales Catholic Church, Defendants-Respondents. [Case No. 94–2141]

Susan SMITH, Plaintiff-Appellant,

v.

ARCHDIOCESE OF MILWAUKEE, Reverend William J. Effinger, and St. Mary's Catholic Church, Defendants-Respondents. [Case No. 94–2384]

John BROWN, Plaintiff-Appellant,

v.

ARCHDIOCESE OF MILWAUKEE, St. Francis Desales Catholic Church, and Reverend William J. Effinger, Defendants-Respondents. [Case No. 94–2852]

Supreme Court

*Nos. 94–0423, 94–0695, 94–2124, 94–2128, 94–2141, 94–2384, 94–2852. Oral argument January 27, 1997.—Decided June 27, 1997.*

(Also reported in 565 N.W.2d 94.)

*See Callaghan's Wisconsin Digest, same topic and section number.

313

315

ABRAHAMSON, C.J., concurs.
CROOKS, J., took no part.

For John BBB Doe and John MMM Doe there were briefs by *Jeffrey R. Anderson, Mark A. Wendorf* and *Reinhardt & Anderson*, St. Paul, MN and oral argument by *Mark A. Wendorf*.

For T.C., J.J., A.C., Susan Smith, John Brown there were briefs by *Robert L. Elliott, Timothy J. Cesar* and *Hausmann-McNally, S.C.*, Milwaukee and oral argument *Robert L. Elliott*.

For Archdiocese of Milwaukee & St. Mary's Congregation, St. Boniface Congregation, St. Francis Desales Catholic Church, St. Mary's Catholic Church, there were briefs by *Matthew J. Flynn, Katherine H. Grebe, Michael J. Fischer* and *Quarles & Brady,* Milwaukee and oral argument by *Matthew J. Flynn*.

For the Reverend S. Joseph Collova there were briefs by *David J. Hase, Christopher J. Jaekels, Stacy C. Gerber Ward* and *Cook & Franke, S.C.,* Milwaukee.

No separate brief (in Supreme Court) filed in regards to Father William Effinger, and Father Jerome Lanser by *Gerald P. Boyle,* Milwaukee, as they joined in the briefs filed on behalf of Archdiocese of Milwaukee.

No separate brief filed (in Supreme Court) in regards to Father Michael Neuberger by *Alex Flynn,* Milwaukee, as he joined in the briefs filed on behalf of Archdiocese of Milwaukee.

¶ 1. JANINE P. GESKE, J. Seven cases are before the court on a consolidated certification from the court of appeals. The plaintiffs allege that as children, and in one case continuing into adulthood, he or she was sexually abused by a Roman Catholic priest employed by the Archdiocese of Milwaukee. All of their complaints were dismissed by the circuit court for Milwaukee County on motions to dismiss or for summary judgment on one or more of the following grounds: the claims were barred by the statute of limitations, for failure to state a claim upon which relief can be granted, or on public policy grounds.

¶ 2. The court of appeals certified the following question: Does the discovery rule save an otherwise untimely, non-incestuous, sexual assault claim against the individual alleged perpetrator when the alleged victim was a minor, and the alleged perpetrator was a person in a position of trust vis-à-vis the child/victim? Applying the discovery rule to these cases, we conclude that the plaintiffs' claims were not timely filed because each of the plaintiffs discovered, or in the exercise of

318

reasonable diligence, should have discovered that he or she was injured at the time of the alleged assault(s) or by the last date of the alleged multiple assaults. Consequently, each plaintiff should have filed his or her action within the applicable statutory period of one or two years after reaching majority. We conclude that in each case, the circuit court properly held that the claims of each plaintiff are barred by the statute of limitations for minors, and therefore affirm.

¶ 3. The seven plaintiffs' claims are similar in nature, but not identical. Five plaintiffs, T.C., J.J., A.C., Susan Smith, and John Brown, claim that they were not aware until recently that the sexual assault(s) caused their psychological and emotional injuries. Two plaintiffs, John BBB Doe and John MMM Doe, claim that they repressed the memory of the incidents of abuse, and of the identity of the abusers.[1] The Doe plaintiffs allege that they suffered injuries as a result of the abuse, but were not aware that the abuse caused these injuries until they recently recalled the abuse. All seven plaintiffs claim the individual priest defendants negligently misused their positions of authority. Each plaintiff also asserts claims against the churches and the Archdiocese for negligent employment, training and supervision of the defendant priests, and for failure to report the abuse.

---

[1] Although the claim of repressed memory of the incident of sexual assault is not asserted in the BBB Doe and MMM Doe complaints, this allegation was included in their briefs in opposition to the motions to dismiss. The circuit courts included this allegation in the facts that they considered as true when making their determinations as to the legal sufficiency of the Doe claims.

## FACTS AND PROCEDURAL HISTORY—PLAINTIFFS T.C., J.J., A.C., SUSAN SMITH, AND JOHN BROWN

¶ 4. Because these cases come to us following the grant of motions to dismiss or for summary judgment, we must take as true all facts pled and all reasonable inferences therefrom, solely for the purpose of testing the legal sufficiency of the claims. *Watts v. Watts*, 137 Wis. 2d 506, 512, 405 N.W.2d 305 (1987). For purposes of our legal analysis only, we accept the following facts.[2] The claims of T.C. and J.J. are similar and can be discussed together. From approximately 1980 until 1987, when T.C. was 14–21 years old, Father S. Joseph Collova sexually assaulted[3] him on hundreds of occasions. T.C. filed suit against Father Collova on December 7, 1993, approximately 6 years after the last date of sexual assault. T.C. amended his complaint to include the Archdiocese of Milwaukee and St. James Catholic Church as defendants on February 21, 1994.

---

[2] For ease of reference, appended to this opinion is a brief chart setting out the dates pertinent to each claim.

[3] In the civil tort realm, assault is defined as essentially a mental rather than a physical invasion. It is the apprehension of a harmful or offensive contact with a person. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 10, at 43 (5th ed. 1984). Battery is defined as a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such contact, or apprehension that such a contact is imminent. *Id.*, § 9 at 39.

"Sexual assault" in our criminal code is defined as sexual contact or intercourse with another person, without the consent of that person. *See* Wis. Stat. § 940.225. For purposes of these complaints, we understand the plaintiffs' civil claims of sexual assault to mean a sexual battery, and not mental invasion.

¶ 5. Approximately during the year 1968, when J.J. was still a minor,[4] Father Michael Neuberger sexually assaulted him on a number of occasions. J.J. filed suit against Father Neuberger, the Archdiocese, and St. Boniface Congregation on February 16, 1994, 26 years after the date of abuse.

¶ 6. As a result of the psychological distress caused by the sexual assaults, T.C. and J.J. each subsequently developed coping mechanisms. According to T.C.'s complaint, he suppressed and was unable to perceive the existence, nature, or cause of his psychological and emotional injuries until approximately 1992, when he was 26 years old. T.C. was unaware that he had suffered emotional damage until it was subsequently diagnosed during treatment. According to J.J.'s complaint, as a result of these coping mechanisms and his distress, he was unable to perceive or know the existence or nature of his psychological and emotional injuries and their connection to the sexual assault(s) until approximately December of 1992, 24 years after the date of assault.

¶ 7. Both T.C. and J.J.'s complaints include claims against the individual priest defendant for breach of fiduciary or ecclesiastical duty and breach of ministerial duties. Both complaints include claims against the local church for negligent supervision and for liability under the doctrine of apparent authority.

---

[4] J.J.'s complaint does not recite his date of birth or age at the time of the assaults. While the complaint does not allege that J.J. was a student of Father Neuberger's or of the Archdiocese, we take the allegations that Father Neuberger breached his duty to J.J. to "instruct, advise, teach and counsel, and to interpret truthfully and faithfully the doctrine and tenets of the Roman Catholic Church on matters of faith, morals and religious doctrine," that J.J. was at least of school age.

Both complaints include claims against the Archdiocese for negligent training, placement, and supervision of the priest, liability under the doctrine of apparent authority, and for breach of duty under Wis. Stat. § 48.981[5] to report abuse and mitigate harm. Both complaints include a claim for punitive damages against all defendants.

¶ 8. The facts for A.C., Susan Smith, and John Brown are similar because all allege sexual assault by Father William J. Effinger and all include claims relating to negligent consumption of alcohol. During 1978, Father Effinger sexually assaulted A.C. on a number of occasions. Although his complaint does not state A.C.'s age in 1978, it does allege that he was a school-age

---

[5] **Wis. Stat. § 48.981 (1995–96) Abused or neglected children.**

**(2)** PERSONS REQUIRED TO REPORT. A physician, coroner, medical examiner, nurse, dentist, chiropractor, optometrist, acupuncturist, other medical or mental health professional, social worker, marriage and family therapist, professional counselor, public assistance worker,. . .school teacher, administrator or counselor, mediator under s. 767.11, child care worker in a day care center or child caring institution, day care provider, alcohol or other drug abuse counselor, member of the treatment staff employed by or working under contract with a county department under s. 46.23, 51.42, or 51.437, physical therapist, occupational therapist, speech-language pathologist, audiologist, emergency medical technician or police or law enforcement officer having reasonable cause to suspect that a child seen in the course of professional duties has been abused or neglected or having reason to believe that a child seen in the course of professional duties has been threatened with abuse or neglect and that abuse or neglect of the child will occur shall, except as provided under sub.(2m), report as provided in sub.(3). Any other person, including an attorney, having reason to suspect that a child has been abused or neglected or reason to believe that a child has been threatened with abuse or neglect and that abuse or neglect of the child will occur may make such a report. No person making a report under this subsection may be discharged from employment for so doing.

minor. A.C. filed suit against Father Effinger, the Archdiocese of Milwaukee, and St. Francis DeSales Catholic Church on February 16, 1994, approximately 14 years after the assault(s). After the Archdiocese was made aware of Father Effinger's assault on A.C., the Archdiocese failed to take appropriate action to treat A.C.'s mental and emotional problems. According to A.C.'s complaint, he was unaware that he had suffered emotional and psychological damage until he was subsequently diagnosed during treatment. He was unable to bring this action any earlier because he was unaware of the injury and its cause, and because defendants' actions and omissions precipitated an emotional condition making A.C. incapable of bringing suit.

¶ 9. Sometime in 1968 or 1969, when Susan Smith was 8 or 9 years old, Father Effinger raped, assaulted and molested her. Based on the record, Susan Smith apparently reported the assault to several immediate family members shortly afterwards. Smith filed suit against Father Effinger, the Archdiocese, and St. Mary's Catholic Church on March 9, 1993, 24 years after the assault(s).

¶ 10. During 1979, Father Effinger sexually assaulted and molested John Brown on a number of occasions. The record indicates that John Brown was born in 1966, and thus was approximately 13 years old at the time of the assaults. Brown filed suit against Father Effinger, the Archdiocese, and St. Francis DeSales Catholic Church on March 9, 1993, approximately 14 years after the assaults.

¶ 11. As a result of the sexual assaults, A.C., Smith, and Brown experienced symptoms of psychological and emotional distress and subsequently developed coping mechanisms. According to their complaints, as a result of the psychological distress and the

coping mechanisms, each suppressed and was unable to perceive or know the existence, nature, or cause of his or her psychological and emotional injuries until approximately January of 1993. Thus, A.C. did not know of his injuries until approximately 13 years after his assault, Susan Smith did not know of her injuries until 24 years after her assault,[6] and Brown did not know of his injuries until 14 years after his assault.

¶ 12. A.C., Smith, and Brown each claim Father Effinger breached his ministerial duties. They claim the Archdiocese was negligent in the training, placement, and supervision of priests; is liable under the doctrine of apparent authority, breached their contract for educational services, is vicariously liable for Father Effinger's negligent consumption of alcohol, and breached a duty under Wis. Stat. § 48.981 to report abuse and mitigate harm. Similarly, they claim the churches are liable for negligent supervision, are vicariously liable for Father Effinger's negligent consumption of alcohol, and are liable under the doctrine of apparent authority. A.C., Smith, and Brown also seek punitive damages against all the defendants.

## CIRCUIT COURT DISPOSITION OF THE CASES OF T.C., J.J., A.C., SUSAN SMITH, AND JOHN BROWN

¶ 13. The Archdiocese and the churches in the T.C., J.J., and A.C. cases moved for dismissal on the grounds that the plaintiffs failed to state a claim upon which relief could be granted, and that any actionable claims were time barred under the applicable statute of

---

[6] While not expressly alleging in her amended complaint that she repressed knowledge of the sexual assault itself, there is evidence in the record that at some point, Smith repressed knowledge of the event itself.

limitations. The circuit court, Judge John E. McCormick, heard and decided together the motions pertaining to T.C., J.J., and A.C. The court dismissed each of their complaints for three reasons. First, the circuit court held that because each plaintiff was aware of the incident of sexual assault, he had a duty of due diligence to discover the injury. Therefore, the complaints were barred by the applicable statute of limitations. Second, the circuit court dismissed the complaints on the public policy grounds of prevention of fraud and protection of defendants from stale claims. Third, the circuit court ruled that the complaints failed to state a claim upon which relief could be granted against the Archdiocese and the churches because Wisconsin courts have not yet recognized the claim of negligent supervision.

¶ 14. In Susan Smith's case, the defendants moved for summary judgment based on a statute of limitations bar against all of Susan Smith's claims, on public policy grounds, and for failure to state a claim against the Archdiocese and St. Mary's. The circuit court, Judge Frank T. Crivello, granted defendants' summary judgment motion. The circuit court held that Susan Smith's action was time-barred by the statute of limitations and that public policy dictated an application of the discovery rule consistent with the sexual exploitation by a therapist statute, Wis. Stat. § 893.585,[7] which limited discovery to 15 years.

---

[7] Wis. Stat. § 893.585 (1991–92) Sexual exploitation by a therapist. (1) Notwithstanding ss. 893.54, 893.55 and 893.57, an action under s. 895.70 for damages shall be commenced within 3 years after the cause of action accrues or be barred.

(2) If a person entitled to bring action under s. 895.70 is unable to bring the action due to the effects of the sexual contact or due to any threats, instructions or statements from the therapist, the period of inability is not part of the time limited for the commencement of

¶ 15. In John Brown's case, the defendants moved for summary judgment. The circuit court, Judge Frank T. Crivello, granted the motion, dismissing all of Brown's claims as barred by the applicable statute of limitations. The court dismissed Brown's claims against the Archdiocese and St. Francis DeSales, finding that Brown had failed to state a claim for respondeat superior and for failure to report abuse. The court held that Father Effinger's actions were beyond the scope of his employment and therefore, Brown could not recover under respondeat superior. The court further held that Wis. Stat. § 48.981 does not impose a duty on organizations to report abuse. Finally, the circuit court ruled that Brown had failed to exercise reasonable diligence in discovering his cause of action for negligent supervision.

## FACTS AND PROCEDURAL HISTORY—THE TWO DOE PLAINTIFFS

¶ 16. Again, for purposes of reviewing the legal sufficiency of these claims, we must take the facts pled

the action, except that this subsection shall not extend the time limitation by more than 15 years.

According to Wis. Stat. § 895.70, "'Therapist' means a physician, psychologist, social worker, marriage and family therapist, professional counselor, nurse, chemical dependency counselor, member of the clergy or other person, whether or not licensed or certified by the state, who performs or purports to perform psychotherapy." Under that same section, "psychotherapy" has the meaning designated in § 455.01(6).

According to Wis. Stat. § 455.01(6), "'Psychotherapy' means the use of learning, conditioning methods and emotional reactions in a professional relationship to assist person to modify feelings, attitudes and behaviors which are intellectually, socially or emotionally maladjustive or ineffectual."

by the two Doe plaintiffs as true. From 1964–1969, beginning when John BBB Doe was approximately age 8 and continuing until he was age 12 or 13, Father Jerome Lanser misused his position of authority, trust, reverence, and control as a Roman Catholic priest by repeatedly engaging in unpermitted, harmful, and offensive sexual contact with Doe. The sexual abuse included fondling and oral sex. The abuse occurred at numerous locations on the grounds of St. Mary's Congregation. John BBB Doe filed suit against the Archdiocese of Milwaukee, St. Mary's Congregation, and Father Lanser on August 20, 1992, when BBB Doe was 36 years old.

¶ 17. Beginning in approximately 1965 until 1967, when John MMM Doe was 16–18 years of age, Father Neuberger misused his position of authority, trust, reverence, and control as a Roman Catholic priest by repeatedly engaging in unpermitted, harmful and offensive sexual contact with Doe. The sexual abuse included fondling and masturbation, and occurred on the premises of St. Boniface. John MMM Doe filed suit against the Archdiocese of Milwaukee, St. Boniface Congregation, and Father Neuberger on April 12, 1993, when MMM Doe was 44 years old.

¶ 18. According to each of the Doe complaints, as a result of the sexual abuse, the two Doe plaintiffs developed various coping mechanisms and symptoms of psychological distress, including shame, embarrassment, guilt, self-blame, denial, repression, and disassociation from their experiences. As a result of their coping mechanisms and distress, the Doe plaintiffs were unable to perceive or know the existence or nature of their psychological and emotional injuries and their connection to the sexual abuse.

¶ 19. According to his complaint, in approximately March of 1990, when John BBB Doe was 34 years old, BBB Doe began to know or have reason to know that Father Lanser's acts caused his psychological injuries. In approximately 1992, John MMM Doe began to know or have reason to know that Father Neuberger's acts caused his psychological injuries.

¶ 20. Each of the Doe plaintiffs claims that the individual priest defendant negligently counseled them, and breached fiduciary duties owed to them. Each of the Does claims that the Archdiocese of Milwaukee and the local church were vicariously liable, negligently supervised, and/or retained the individual priest, and negligently supervised the minor plaintiff. According to John BBB Doe's complaint, the individual priest defendant breached his ministerial duties by wrongfully instructing BBB Doe on matters of faith and morals and religious doctrine. The defendant priest used his authority and influence as a minister to importune, cajole, coerce, and overpower John BBB Doe.

¶ 21. John MMM Doe further alleges that Father Neuberger also breached his duty of care to Doe by failing to identify and properly respond to the transference and/or counter transference phenomenon which developed within their counseling relationship.

¶ 22. The defendants in both Doe cases moved to dismiss the complaints against the Archdiocese and the churches. The defendants asserted that the Doe complaints were barred by the statute of limitations and for failure to state a claim upon which relief could be granted. These motions were heard and decided separately, by different circuit courts.

¶ 23. The defendants in the BBB Doe case argued to the circuit court that the complaint failed to address

many factual specifics central to this controversy. Defendants contended that the plaintiff's claims for vicarious liability were governed by the two-year statute of limitations for intentional torts. They argued that even if the court accepted March of 1990 as the date that the cause of action accrued, by not filing until August of 1992, BBB Doe had missed the statute of limitations deadline for vicarious liability. In addition, defendants maintained that by utilizing due diligence, BBB Doe discovered or should have discovered the sexual assaults before August 20, 1989 (three years prior to commencement of suit). As such, even under the discovery rule, the three-year statute of limitations for injuries bars Doe's claims.

¶ 24. John BBB Doe responded that he had not known nor had reason to know of the sexual abuse, or that his injuries resulted from the contacts until March of 1990. Therefore, under the discovery rule, his suit was not barred by the three-year statute of limitations. BBB Doe argued that the exercise of due diligence to discover the abuse and the resulting injuries was a question of fact. Doe argued that the defendants did not provide sufficient facts to prove that in exercising due diligence, plaintiff should have known of the sexual contacts and his resulting injuries earlier.[8] The circuit court, Judge Laurence C. Gram, Jr., dismissed John BBB Doe's complaint as barred by the statute of limitations. In doing so, the court adopted as its reasoning that part of the Archdiocese's brief pertaining to the

---

[8] We note that in his brief opposing defendants' motion to dismiss, John BBB Doe alternatively requested leave to amend his complaint if the court found that his complaint was not properly pled. Because that issue is not presented in the question certified to us, nor is it presented in BBB Doe's briefs to this court, we need not address it.

statute of limitations. The circuit court did not indicate which of defendants' reasons it had adopted as the basis for its decision.

¶ 25. The circuit court declined to consider the affidavit of therapist Dr. Nancy Perry, first submitted as part of BBB Doe's opposition to the motion to dismiss. In reviewing an order of dismissal under Wis. Stat. § 802.06, we will not consider matters outside the pleadings not accepted by the circuit court for its consideration. Thus, we do not consider affidavits filed with BBB Doe's brief opposing the defendants' motions to dismiss.

¶ 26. We turn to plaintiff John MMM Doe. Although not specifically alleged in his complaint, MMM Doe asserted in his opposition brief that he had suppressed memory of the sexual contacts and was not aware of the sexual abuse until less than 2 years before commencement of his suit, or until 1992. According to MMM Doe, he had experienced psychological injuries over the years, but did not discover the cause of those injuries until 1992. John MMM Doe requested leave to amend his pleadings if the circuit court found them insufficient.

¶ 27. Similar to BBB Doe, John MMM Doe submitted an affidavit of Dr. Basil Jackson, a psychiatrist, as part of his opposition to the defendants' motion to dismiss. The circuit court's memorandum decision and order made no reference to that affidavit.

¶ 28. The circuit court, Judge John E. McCormick, granted defendants' motion to dismiss. The court held that, given the dates of injury or abuse from 1965–67, John MMM Doe did not take the proper steps to reasonably discover his repressed emotions. Therefore, his claims were barred by the statute of limitations. The circuit court further found that to per-

mit a claim to proceed 26–28 years after the abuse would violate public policy.

¶ 29. The circuit court also found that MMM Doe had failed to state a claim against the Archdiocese and St. Boniface for negligent supervision. First, the court stated that Wisconsin had not yet recognized the tort of negligent supervision. Second, the alleged conduct of the priest was outside the scope of his employment as a matter of law, and, therefore the Archdiocese and St. Boniface could not be liable under respondeat superior.

¶ 30. All seven plaintiffs appealed the dismissal of their complaints by the circuit court. These seven cases are before us on a consolidated certification from the court of appeals.

## STANDARD OF REVIEW

¶ 31. Plaintiffs T.C., J.J., A.C., John BBB Doe, and John MMM Doe seek reversal of the lower courts' orders of dismissal. A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint. *Watts*, 137 Wis. 2d at 512. While we accept the facts pled as true for purposes of our review, we are not required to assume as true legal conclusions pled by the plaintiffs. *State v. Wisconsin Telephone*, 91 Wis. 2d 702, 720, 284 N.W.2d 41 (1979). Dismissal of a claim is improper if there are any conditions under which the plaintiffs could recover. *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 733, 275 N.W.2d 660 (1979).

¶ 32. If a motion to dismiss is filed under Wis. Stat. § 802.06 and matters outside the pleadings are presented and accepted by the court for its consideration, the motion is considered a motion for summary judgment. *See* Wis. Stat. § 802.06(3). *Hammer v. Ham-*

*mer*, 142 Wis. 2d 257, 260 n.3, 418 N.W.2d 23 (Ct. App. 1987).

¶ 33. Plaintiffs Susan Smith and John Brown seek reversal of the orders granting summary judgment. In reviewing such an order, an appellate court applies the same standards as does a circuit court. *Wisconsin Patients Compensation Fund v. Wisconsin Health Care Liability Insurance Plan*, 200 Wis. 2d 599, 606, 547 N.W.2d 578 (1996). These standards are set forth in Wis. Stat. § 802.08(2).[9] The summary judgment "methodology does not allow enlargement of the issues beyond those framed by the pleadings.. . .Were the rule otherwise, plaintiff's affidavit opposing a defendant's motion for summary judgment would itself constitute a complaint which must be answered and require a new motion for summary judgment." *C.L. v. Olson*, 140 Wis. 2d 224, 239, 409 N.W.2d 156 (Ct. App. 1987), *aff'd*, 143 Wis. 2d 701, 422 N.W.2d 614 (1988).

¶ 34. Pursuant to Wis. Stat. § 802.08(2), summary judgment must be entered if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law. *Firstar Trust Co. v. First National Bank of Kenosha*, 197 Wis. 2d 484, 492, 541 N.W.2d 467 (1995). "[W]here facts, even if material, are disputed, those facts become irrelevant if, in giving full benefit to the party against whom summary

---

[9] Wis. Stat. § 802.08 (1993–1994) **Summary judgment.**

. . .

(2) . . .The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

judgment is sought, the claim nevertheless is barred as a matter of law." *Byrne v. Bercker*, 176 Wis. 2d 1037, 1045, 501 N.W.2d 402 (1993). Whether the defendants here are entitled to summary judgment depends upon whether the claims against them are barred by the statute of limitations.

¶ 35. We first determine when the plaintiffs' claims accrued. *Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 559, 335 N.W.2d 578 (1983). Once the date of accrual is determined, we can assess whether the plaintiffs filed suit within the applicable statutory limitations period. Then, if the suits were filed within the applicable statute of limitations, we address the substantive propriety of the claims.

## ACCRUAL OF THE CLAIMS OF PLAINTIFFS T.C., J.J., A.C., SUSAN SMITH, AND JOHN BROWN

¶ 36. Plaintiffs T.C., J.J., A.C., Susan Smith, and John Brown contend that their claims accrued not on the date of the assaults, but on the date they discovered their injuries or the date on which, after reasonable diligence, they should have discovered their injuries. Citing *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 420–21, 388 N.W.2d 140 (1986), these five plaintiffs assert that their claims could not have accrued until four conditions were met, namely that each plaintiff knew, to a reasonable probability, 1) the identity of the responsible defendant, 2) that he or she had sustained an injury, 3) the cause of the injury, and 4) the nature of the injury. For these five plaintiffs, the asserted dates of discovery range from 5 to 25 years after the actual dates that the sexual assaults occurred or ended.

¶ 37. The policy considerations behind statutes of limitations, and the rules for accrual of claims, are

333

several. On the one hand, we are concerned with allowing tort victims a fair opportunity to enforce legitimate claims against wrongdoers. On the other hand, we are concerned with protecting defendants from having to defend against stale claims, where so much time has passed between the allegedly tortious act and the filing of the claim that witnesses and relevant evidence may be unavailable. Such deficits can preclude both the fair prosecution of claims and meaningful defenses. We are also concerned with preventing the prosecution of fraudulent claims. All of these considerations underlie statutes of limitations and ultimately promote efficient judicial administration.

¶ 38. Prior to 1983, this court declined to adopt the discovery rule, reasoning that such a change in the law should be enacted by the legislature. Our pre-discovery rule cases are summarized in *Claypool v. Levin*, 209 Wis. 2d 284, 562 N.W.2d 584, para. 13–14 (1997). With our decision in *Hansen*, 113 Wis. 2d 550, we reversed a long line of cases that had established the accrual date for personal injury actions as the date of the tort causing the injury. *Hansen* and several subsequent decisions have shaped the requirements for determining when a tort cause of action accrues in Wisconsin.[10], [11] *See Hansen*, 113 Wis. 2d 550; *Borello*, 130 Wis. 2d 397.

---

[10] As recounted in *Claypool v. Levin*, 209 Wis. 2d 284, 562 N.W. 2d 584 (1997), the accrual of a medical malpractice cause of action was determined by the legislature in 1979 when it enacted Wis. Stat. § 893.55(1)(b).

[11] *See*, however, *Estate of Makos*, 211 Wis. 2d 41, 44, 564 N.W.2d 662 (1997) considering Wis. Stat. § 893.55(1)(b). Although the concurrence in this case refers to the *Makos* opinion, the only "majority" holding in that case is the mandate. Of the four "majority" justices, three separate opinions give three

¶ 39. In *Hansen* we wanted to avoid the harsh results produced by commencing running the statute of limitations before the plaintiff was aware of any basis for an action. By adopting the discovery rule we balanced the competing policies favoring plaintiffs and defendants. We adopted the rule "for all tort actions other than those already governed by a legislatively created discovery rule. Such tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first." 113 Wis. 2d at 560. In *Borello*, we said that the discovery rule required not only the discovery of the injury, but also discovery of the cause of the injury. According to *Borello*, the statute of limitations should not commence to run until the plaintiff discovers, or in the exercise of reasonable diligence, should have discovered his or her injury and that the injury may have been caused by the defendant's conduct. 130 Wis. 2d at 411.

¶ 40. Shortly after *Borello*, the court of appeals considered application of the discovery rule to an intentional tort claim for incestuous abuse. *Hammer*, 142 Wis. 2d at 258. There, citing *Borello* and *Hansen*, the appellate court held that as a matter of law, a cause of action for incestuous abuse will not accrue until the victim discovers, or in the exercise of reasonable diligence should have discovered, the fact and cause of the injury. 142 Wis. 2d at 264. The *Hammer* court analogized the facts regarding the date of discovery as pled by the incest victim to those pled in *Borello*. *Id.* at 266. A further justification for tolling the statute of limitations was that "[v]ictims of incest have been harmed because of a 'most egregious violation of the par-

distinct reasons for the result. Therefore, none of the opinions in that case has any precedential value.

335

ent/child relationship,' " and that to "protect the parent at the expense of the child works an 'intolerable perversion of justice.' " *Id.* at 267.

¶ 41. The defendant father argued in *Hammer* that the statute of limitations for minors applied to his daughter's claim, and rendered her claim too late. 142 Wis. 2d at 263. The court of appeals rejected this argument, and applied the discovery rule to claims of incest. *Id.* at 267. The legislature later codified the *Hammer* decision by enacting Wis. Stat. § 893.587 as the statute of limitations for claims of incest.[12] *See Pritzlaff v. Archdiocese,* 194 Wis. 2d 302, 319, 533 N.W.2d 780 (1995), *cert. denied,* 116 S. Ct. 920 (1996).

¶ 42. We applied the discovery rule codified in Wis. Stat. § 893.587 to another case of alleged incest in *Byrne,* 176 Wis. 2d 1037, 1046. There we said that the discovery rule tolled the statute of limitations until the plaintiff first recalled her father's abuse as the cause of her emotional and psychological injuries. At that point, she knew the nature and extent of her injuries, and knew that her father caused those injuries. 176 Wis. 2d at 1046–47. Nonetheless, we held that her claim was barred because she delayed too long after discovering the elements of her claim to file suit. 176 Wis. 2d at 1047–48.

¶ 43. More recently, we were asked to apply the discovery rule in a non-incestuous sexual assault case. *Pritzlaff,* 194 Wis. 2d 302. There the plaintiff alleged that she was coerced into sexual relations with a priest.

---

[12] **Wis. Stat. § 893.587 (1995–96) Incest; limitation.** An action to recover damages for injury caused by incest shall be commenced within 2 years after the plaintiff discovers the fact and the probable cause, or with the exercise of reasonable diligence should have discovered the fact and the probable cause, of the injury, whichever occurs first.

Ms. Pritzlaff filed suit against the priest and the Archdiocese. Although only the claims against the Archdiocese were before us on review, we considered Ms. Pritzlaff's claims against both the priest and the Archdiocese. 194 Wis. 2d at 311, n.1. We described the discovery rule:

> [T]he discovery rule is so named because it tolls the statute of limitations until the plaintiff discovers or with reasonable diligence should have discovered that he or she has suffered actual damage due to wrongs committed by a particular, identified person. Until that time, plaintiffs are not capable of enforcing their claims either because they do not know that they have been wronged or because they do not know the identity of the person who has wronged them. Accordingly, " '[d]iscovery' in most cases is implicit in the circumstances immediately surrounding the original misconduct."

194 Wis. 2d at 315–16 (citations omitted). We held that the discovery rule did not save plaintiff's cause of action because she knew all of the elements of her underlying claim against the priest, at the latest, by the time their relationship ended. 194 Wis. 2d at 315.

¶ 44. In considering Ms. Pritzlaff's knowledge of the elements of her claim, we accepted her statement that she had always been aware of the tortfeasor and of the tortious conduct, conduct which was the result of force and coercion. 194 Wis. 2d at 316–17. In light of the plaintiff's knowledge, we determined that the priest's alleged contact was immediately actionable as a civil battery or offensive bodily contact. 194 Wis. 2d at 317, citing Wis JI—Civil 2005; Wis JI—Civil 2010[13] (approved 1960). Thus we concluded that Ms. Pritzlaff,

---

[13] Wis JI—Civil 2005 provides in pertinent part:

knowing both the identity of the tortfeasor and the injurious conduct, could have alleged a complete cause of action by the time the relationship ended. *Id.* at 316–17. Her claim that she was unaware of additional harm, i.e., the severe emotional distress, only created uncertainty as to the amount of damages suffered, and did not toll the period of limitations. *Id.* at 317. In essence, we applied the discovery rule to Ms. Pritzlaff, and determined as a matter of law that she discovered, or in the exercise of reasonable diligence, should have discovered all of the elements of her claim by the time her relationship with the defendant priest ended.

¶ 45. Consistent with our decisions in *Hansen*, *Borello*, and *Pritzlaff*, we now apply the discovery rule to the claims of these plaintiffs, to ascertain when they discovered or, in the exercise of reasonable diligence, should have discovered all of the elements of their claims.

---

"Bodily harm" means physical pain or injury, illness, or any impairment of physical condition.

The Comment appended to Wis JI—Civil 2005 states:

When there has been a bodily contact, without injury except to the dignity and personal sensibilities of the person subjected to the battery, use Wis JI—Civil 2010.

Wis JI—Civil 2010 provides in pertinent part:

The unlawful and intentional subjection of another to an offensive bodily contact is an assault and battery. Not every touching of one person by another is unlawful. To constitute an assault and battery, there must be an infliction of force upon another, without regard to the degree of force applied, and such infliction of force must be made in anger, for revenge, or in a rude or insolent manner. Every person is by right entitled to be free of offensive bodily contacts, that is, contacts which are offensive to a reasonable sense of personal dignity, contacts which are unwarranted by the social usages prevalent at the time and place at which they are inflicted.

¶ 46. Each of these five plaintiffs' complaints alleges sexual assault by an individual priest defendant on one or more occasions. Those events took place between 1980–87 for T.C., in the year 1968 for J.J., during 1978 for A.C., in either 1968 or 1969 for Susan Smith, and during 1979 for John Brown. None of these five plaintiffs filed a civil complaint with regard to these acts before 1993. At the time of the sexual assaults, at least three of the five plaintiffs were 8 years old or older. John Brown and T.C., at least, were abused as teenagers. Susan Smith, who was 8 or 9 years old at the time of her rape and assault, apparently reported the assault to several immediate family members shortly afterwards. The record indicates that John Brown told his parents within hours of the occurrence, and that his parents reported it to the Archdiocese. From his complaint, we know that A.C. was a school-age minor at the time of the assault, and also according to the complaint, someone made the Archdiocese aware of the assaults on A.C. by Father Effinger.[14] As the circuit court noted in ruling on the motions to dismiss the complaints of A.C., T.C., and J.J., none of the plaintiffs alleged that they were unable to remember the abuse itself at any time between the occurrence and the filing of their claims.

¶ 47. All five plaintiffs knew the perpetrators as their parish or school priests. These five plaintiffs knew, according to their complaints, that these perpetrators engaged in sexual fondling or other sexual contact with the plaintiffs on one or multiple occasions,

---

[14] Paragraph 27 of A.C.'s complaint alleges: "That after the ARCHDIOCESE had been made aware of the sexual assaults on A.C. by EFFINGER, the ARCHDIOCESE negligently failed to take appropriate action to provide proper care and treatment to A.C. to treat his mental and emotional problems."

away from the view of their parents or other responsible persons.[15] Thus, we conclude that these five plaintiffs knew at least the identity of the responsible defendant and the nature of their injury no later than the time of the last sexual assault.[16]

¶ 48. According to *Borello* and *Pritzlaff*, we must also consider when the plaintiffs discovered or, in the exercise of reasonable diligence, should have discovered that they were injured, and the cause of their injury. Plaintiffs have a duty to inquire into the injury that results from tortious activity. *See E.J.M. v. Archdiocese*, 622 A.2d 1388, 1394 (Pa. Super. Ct. 1993). The measure of diligence required of a plaintiff to discover the elements of his or her cause of action is such diligence as the great majority of persons would use in the same or similar circumstances. Plaintiffs may not ignore means of information reasonably available to them, but must in good faith apply their attention to those particulars which may be inferred to be within their reach. *Spitler v. Dean*, 148 Wis. 2d 630, 638, 436 N.W.2d 308 (1989). Such diligence, we later qualified,

[15] In addition, the plaintiffs assert in their briefs that this sexual fondling or other sexual contact was inflicted forcibly and was offensive.

[16] Courts in other jurisdictions have reached the same conclusions. *See, e.g., E.W. v. D.C.H.*, 754 P.2d 817, 821 (Mont. 1988) (superseded by statute) (finding it not unreasonable to assume that upon reaching majority age, the plaintiff was aware that child molestation was a wrongful act); *Lovelace v. Keohane*, 831 P.2d 624, 631 (Okla. 1992) (ruling that cause of action accrued at end of each sexual encounter, despite plaintiff's unawareness of all her injuries); *Lindabury v. Lindabury*, 552 So. 2d 1117 (Fla. Dist. Ct. App. 1989) (per curiam) (stating that last contemporaneous injury begins the limitations period for intentional tort).

does not require that a plaintiff "officially be informed by an expert witness of his or her injury, its cause or the relation between the injury and its cause." *Clark v. Erdmann*, 161 Wis. 2d 428, 448, 468 N.W.2d 18 (1991). If the plaintiff has information providing the basis for an objective belief as to his or her injury and its cause, he or she has discovered the injury and its cause. *Clark*, 161 Wis. 2d at 448.

¶ 49. Ordinarily, reasonable diligence is a question of fact for the fact-finder. *Spitler*, 148 Wis. 2d at 638. However, when the facts and reasonable inferences that can be drawn from them are undisputed, whether a plaintiff has exercised reasonable diligence in discovering his or her cause of action is a question of law. *Hennekens v. Hoerl*, 160 Wis. 2d 144, 161, 465 N.W.2d 812 (1991). In addition, whether an inference is reasonable is a question of law. *Hennekens*, 160 Wis. 2d at 162.

¶ 50. These five plaintiffs contend that they did not discover the causal relationship between the priests' conduct and their injuries until at least approximately 1992. The circuit courts viewed the records differently. In granting defendants' motion for summary judgment, the circuit court found the record replete with instances whereby John Brown knew he was suffering from psychological injuries, and that he directly related his problems to the priest's conduct. The circuit court that dismissed the claims of T.C., A.C., and J.J. found that the plaintiffs were aware of all of the facts necessary to put them in the position to discover that they were injured.[17] While the circuit court that dismissed Susan Smith's claim did so based

---

[17] The circuit court specifically stated:

on public policy grounds, there is also evidence in the record that Susan Smith suffered from physical pain at the time, and also that she reported the assault to her parents.

¶ 51. We conclude, as a matter of law, that because the acts complained of were conducted intentionally, and without the consent of the minor victims, that each of the five plaintiffs discovered or, in the exercise of reasonable diligence, should have discovered that he or she was injured at the time of the assaults. *See* Wis JI—Civil 2010. Further, when a conscious person perceives an immediate injury, the causal link is obvious. We therefore also conclude, as a matter of law, that each of these five plaintiffs discovered or, in the exercise of reasonable diligence, should have discovered the cause of their injury at least by the time of the last incident of assault.

¶ 52. Other jurisdictions agree with our conclusions. *See, e.g., Doe v. Archdiocese of Washington,* 689 A.2d 634, 640 (Md. Ct. Spec. App. 1997 ) (plaintiff who alleged sexual abuse by priests as an adolescent "suffered 'an invasion of a legally protected interest' immediately when the batteries actually occurred, even if his problems worsened over time"); *DeRose v. Carswell,* 242 Cal. Rptr. 368, 371 (Cal. Ct. App. 1987) (sexual abuse causes harm at time of abuse, as a mat-

---

[T]he plaintiffs were aware of all of the facts necessary to put them in the position to discover that they were injured, at all times, and the actions are therefore untimely and barred as a matter of law. In a sexual abuse or assault case where the conduct causes harm as a matter of law when it occurs, the plaintiff should not be allowed to toll the statute of limitations indefinitely simply by alleging that he never knew what (sic) the incident had caused his harm.

June 20, 1994 hearing transcript, at 10–11.

ter of law);[18] and *Marsha V. v. Gardner*, 281 Cal. Rptr. 473, 477 (Cal. Ct. App. 1991) ("a young child sexually molested against his or her will suffers an actual and appreciable injury at the time, and would be entitled to more than nominal damages"). An Illinois court recognized the "inevitability of injury" and that "emotional harm is practically certain to result from sexual assaults. . .even if the abuse was not accomplished through violence or threats of violence" in cases of sexual assault of minors. *Maryland Casualty Co. v. Havey*, 887 F. Supp. 195, 198 (C.D. Ill. 1995).

¶ 53. The *Marsha V.* court concluded that the plaintiff, a victim of incest, knew or should have known she was injured from the time of the assaults. There the plaintiff alleged sexual molestation by her stepfather for a number of years during childhood, but did not file suit until she was 32 years old. 231 Cal. App. 3d at 268. According to her pleadings, the plaintiff claimed no lack of awareness of the acts of molestation at the time they were committed, nor did she claim "contemporaneous or belated ignorance of the wrongfulness" of that conduct. *Id.* at 271. Thus, the *Marsha V.* court concluded that unless the plaintiff had immediately suppressed awareness of the acts, she had always known the elements of her claim, including causation. *Id.* at 273.

¶ 54. We find, as a matter of law, the same measure of awareness in the claims of these five plaintiffs. As we recognized in *Pritzlaff*, actionable injury flows immediately from a nonconsensual, intentional sexual

---

[18] The holding in *DeRose* may have been superseded by a statutory amendment. *See* Cal. Stats. 1990, c. 1578, pp. 6403–05, *see contra, Marsha V. v. Gardner*, 281 Cal. Rptr. 473, 477 (Cal. Ct. App. 1991).

touching. 194 Wis. 2d at 317. While the plaintiffs may not have known the extent of their injuries at the time of the sexual assaults, in Wisconsin accrual of an action is not dependent upon knowing the full extent of one's injuries. *Id.*[19]

¶ 55. In cases where there has been an intentional, non-incestuous assault by one known to the plaintiff, and the plaintiff sustains actual harm at the time of the assault, the causal link is established as a matter of law. These plaintiffs knew the individual

---

[19] The two Doe plaintiffs characterize our conclusion that sexual abuse causes harm when it occurs as an "irrelevant truism." Petitioner John MMM Doe reply brief at 2 n.1; Petitioner John BBB Doe reply brief at 3 n.2. Although we agree that under the discovery rule, the proper question is when the plaintiffs reasonably should have known that injury occurred and the cause of that injury, the fact that the plaintiffs were harmed at the time of the assault(s) is not irrelevant but is the starting point for a determination of when the plaintiffs reasonably should have known they were injured and the cause of that injury. In many tort cases, harm at the time of the assault is also the end point for that inquiry. *See Borello v. U.S. Oil Co.,* 130 Wis. 2d 397, 404 n.2, 388 N.W.2d 140 (1986).

Other jurisdictions also take the approach that accrual of an action is not dependent upon knowing the full extent of one's injuries. *See, e.g., Franke v. Geyer,* 568 N.E.2d 931, 933 (Ill. App. Ct. 1991) (holding that a plaintiff need not know all of the facts or circumstances before the statute of limitations begins to run); *Doe v. R.D.,* 417 S.E.2d 541, 542 (S.C. 1992) (interpreting statutory term of "reasonable diligence" to mean that injured party must act with promptness where the facts and circumstances of an injury put him on notice that a right has been invaded or that some claim might exist); *Doe v. Roe,* 931 P.2d 1115, 1120 (Ariz. Ct. App. 1996), *review granted,* (holding that, for the limitations statute to run, all that is required is knowledge of enough facts to prompt a reasonable person to investigate and discover full extent of the claim).

priests, knew the acts of sexual assault took place, and knew immediately that the assaults caused them injury. We therefore conclude that these plaintiffs discovered, or in the exercise of reasonable diligence, should have discovered all the elements of their causes of action against the individual perpetrators at the time of the alleged assault(s), or by the last date of the alleged multiple assaults.[20] As in *Pritzlaff*, the causes of action for T.C., J.J., A.C., Susan Smith, and John Brown accrued no later than the last incident of assault during their minority.

¶ 56. The plaintiffs would have us limit *Pritzlaff* to cases of sexual abuse of an adult victim, and not apply it to abuse of children. Plaintiffs rely on the *Pritzlaff* discussion distinguishing the special discovery rule for claims of incest. *See, e.g.*, Petitioner T.C.'s brief at 15–16, citing 194 Wis. 2d at 322. But *Pritzlaff* did not suggest expanding the scope of the incest statute to include victims who are related neither by blood or adoption to their abusers. That expansion is for the legislature. *See* Wis. Stat. § 893.587.

¶ 57. Plaintiffs seek to benefit from a specialized discovery rule because they were victimized as young children or teenagers. Because they were only children, they say, they viewed their abusers with respect and reverence. Because they were only children, they say, they did not and could not discover their cause of action

---

[20] These five plaintiffs essentially admit that they knew they suffered injury at or shortly after the alleged assaults. *See, e.g.*, Petitioner T.C.'s brief at 11, "The injuries are psychological and they develop and manifest gradually beginning at childhood." As noted above, there is evidence in the record, or at least a reasonable inference, that plaintiffs A.C., Susan Smith, and John Brown reported the assaults to their parents within a short time after the event(s).

for assault, until much later in adulthood. Based on the nature of a sexual assault by a known perpetrator, we conclude as a matter of law that the claims of these plaintiffs accrued by the time of the last incident of sexual assault.

¶ 58. The legislature determines when the opportunity to file a claim for an accrued cause of action expires. Unless otherwise specified by law, a period of limitation within which an action may be commenced is computed from the time that the cause of action accrues until the action is commenced. Wis. Stat. § 893.04.[21] The legislature has concluded, as evidenced by statute, that persons who are victimized as children have an extended opportunity to file their claims.

> [T]he provision tolling the statute of limitations during the period of the disability of infancy, dates back to at least 1848. Wis. Rev. Stats. 1848, ch. 127. The purpose of tolling the statute of limitations during a party's disability (in this case being within the age of 18) is to ensure that the minor does not lose rights because a guardian neglected to protect the minor's interest by bringing an action in a timely fashion. The time period for initiating an action is extended by statute to allow the minor to enforce his or her own rights upon reaching the age of majority.

*Korth v. American Family Ins. Co.*, 115 Wis. 2d 326, 332, 340 N.W.2d 494 (1983). This legislative suspension of the time within which an infant must commence a lawsuit is partly due to the requirement that infancy

---

[21] **Wis. Stat. § 893.04 (1993–94) Computation of period within which action may be commenced.** Unless otherwise specifically prescribed by law, a period of limitation within which an action may be commenced is computed from the time that the cause of action accrues until the action is commenced.

346

precludes the commencement of an action in the infant's name alone. *Christy v. Schwartz*, 49 Wis. 2d 760, 764, 183 N.W.2d 81 (1971). Notably, however, the condition of infancy does not foreclose commencement of a lawsuit on the infant's behalf. Wis. Stat. § 803.01(3). An action on behalf of a minor can be commenced by a guardian ad litem.

¶ 59. The legislature has tolled the statute of limitations for minors to file personal injury actions until they reach majority. *See* Wis. Stat. § 893.16.[22] Prior to 1971, the age of majority in Wisconsin was 21 years. The relevant pre–1971 statute mandated that a cause of action accruing during minority be brought within one year after the claimant's 21st birthday, or be barred. *See, e.g.*, Wis. Stat. § 893.33 (1965).

¶ 60. In 1971, the legislature lowered the age of majority to 18. See § 5, ch. 213, Laws of 1971. Thus, beginning on March 23, 1972 (the date after publication), § 893.33 mandated that a cause of action accruing during minority be brought within one year after the claimant's 18th birthday, or be barred. *See, e.g.*, Wis. Stat. § 893.33 (1977).

¶ 61. In 1979, Chapter 893 was repealed and recreated in its entirety. § 28, ch. 323, Laws of 1979.

---

[22] **Wis. Stat. § 893.16 (1979) Person under disability.**

**(1)** If a person entitled to bring an action is, at the time the cause of action accrues, either under the age of 18 years, . . .; or insane,. . .the action may be commenced within 2 years after the disability ceases. . . .

. . . .

**(5)** This section applies only to statutes in this chapter limiting the time for commencement of an action or assertion of a defense or counterclaim except it does not apply to:

. . . .

 (c) A cause of action which accrues prior to July 1, 1980.

Section 893.33 was revamped and renumbered as § Wis. Stat. § 893.16, and the limitation period after minority was increased to two years. Thus, a claim accruing during minority had to be brought within two years of the claimant's 18th birthday, or be barred. However, § 893.16 does not apply to causes of action arising prior to July 1, 1980. *See, e.g.*, § 893.16 (1987–88). The statute has not undergone further changes in the interim.

¶ 62. Although we conclude that, as a matter of law, these plaintiffs' claims accrued at the time of their last assaults, we recognize that the legislature has given them varying amounts of time to file their causes of action based upon their respective ages at the time of the assaults. In permitting this extension of time to file a claim, the legislature undoubtedly recognized that human emotional and intellectual development is progressive. For example, a six-year old child who suffers a sexual assault has twelve years to mature to legal adulthood. Only at that point will the statute of limitations begin to run on his or her claim. Correspondingly, a sixteen-year old youth who suffers a sexual assault is more emotionally and intellectually developed. The legislature affords him or her an additional two years to comprehend the wrongfulness of the defendant's conduct, and the harm that conduct caused. In effect, the legislature has created a sliding scale of opportunity to file suit, based upon the minor's age at the time of accrual.

¶ 63. We are also cognizant that a six-year old child, for example, may not fully realize at age 6 that he or she has been the victim of a completed tort, and that he or she has a cause of action. Lack of a full understanding by the child victim can exist whenever the child has been the victim of any tortious act. The legis-

348

lature obviously decided to address this problem by giving minors the extended statute of limitations. The younger the victim at the time of the tort, the longer that child has to commence his or her lawsuit.

¶ 64. All seven plaintiffs here seek to benefit from two other statutes of limitations. In 1985, the legislature extended the limitations period for claims of sexual exploitation by a therapist. Wis. Stat. § 893.585. In 1987, the legislature created an extended limitations period for claims of incest.[23] Wis. Stat. § 893.587.

¶ 65. None of the seven plaintiffs here assert that the defendant priests rendered psychotherapy to the plaintiffs. Nor do they raise claims of incest. Instead, the plaintiffs ask this court to draw analogies between their claims and the acts that fall within the ambit of the therapist and incest statutes. The plaintiffs ask the court, and not the legislature, to create an extended limitations period for minor victims of non-incestuous sexual assault when the perpetrators are in a position of trust vis-à-vis the child/victim.

¶ 66. It is true that in 1983 this court chose to act in spite of legislative inaction. In *Hansen* we concluded that the time had come to adopt the discovery rule in Wisconsin for all tort actions not otherwise covered by statute. *Hansen*, 113 Wis. 2d 557. We do not face the same history of legislative inaction here. Rather, we face a history of discrete legislative measures to extend the tolling of the statute of limitations for certain types of personal injury actions.

---

[23] **Wis. Stat. § 893.587 (1993–94) Incest; limitation.** An action to recover damages for injury caused by incest shall be commenced within 2 years after the plaintiff discovers the fact and the probable cause, or with the exercise of reasonable diligence should have discovered the fact and the probable cause, of the injury, whichever occurs first.

¶ 67. While our legislature has extended the statute of limitations for two types of sexual assault, incest, Wis. Stat. § 893.587, and sexual exploitation by a therapist, Wis. Stat. § 893.585, it has not seen fit to extend the limitations period for other types of actions alleging sexual assault of minors. This is true even though, as the plaintiffs uniformly point out, other state legislatures have done so.[24]

¶ 68. We cannot equate the sexual assaults alleged here to allegations of incest. This is so despite the plaintiffs' claims that they either failed to report the assaults or did not recognize the wrongfulness of the assaults because the plaintiffs held great admiration, trust, reverence, and respect for Catholic priests. Trust and confidence should not "devolve into blind faith and exempt the plaintiff from the duty diligently to pursue potential claims." *Groom v. Professionals Ins. Co.*, 179 Wis. 2d 241, 251 n.4, 507 N.W.2d 121 (Ct. App. 1993).[25]

¶ 69. Further, the Wisconsin legislature has already recognized that some adults may hold such

[24] In their briefs, these five plaintiffs refer to statutes in 19 other states for the proposition that "the overwhelming number of state legislatures who recognize delayed accrual of causes of action for childhood sexual abuse also attests to the strong public policy in favor of allowing otherwise 'stale' claims to proceed." The quantity of those statutes makes a more compelling argument for leaving such an extension of the limitations period to the legislature, than to the courts.

[25] Societal stigmatization and familial constraints also may deter a victim from bringing a claim, but such dynamics, as characterized by the dissent in a Colorado case, do not toll the applicable statute of limitations. *See Cassidy v. Smith*, 817 P.2d 555, 557–58, 559 (Colo. Ct. App. 1991).

sway over children as to prevent them from recognizing the wrongfulness of their conduct, or to prevent them from reporting that harmful conduct to others. In light of that manipulative potential, the legislature has defined perpetrators of incest as persons related by blood or adoption.[26] The legislature did not include within that limitations extension claims of abuse by other persons who may hold influence in a child's life.

¶ 70. Section 893.587, Stats., is a specialized discovery rule applicable only to claims of incest. *Pritzlaff*, 194 Wis. 2d at 321. Other courts have drawn the same line, and have declined to judicially extend the incest statute of limitations to persons not blood or adoptive relatives, but who are merely alleged to have some control or authority over the victim.[27] Extended limita-

---

[26] **Wis. Stat. § 948.06 (1993–94) Incest with a child.** Whoever does any of the following is guilty of a Class C felony:

**(1)** Marries or has sexual intercourse or sexual contact with a child he or she knows is related, either by blood or adoption, and the child is related in a degree of kinship closer than 2nd cousin; or

**(2)** Is a person responsible for the child's welfare and:

(a) Has knowledge that another person related to the child by blood or adoption in a degree of kinship closer than 2nd cousin has had or intends to have sexual intercourse or sexual contact with the child;

(b) Is physically and emotionally capable of taking action that will prevent the intercourse or contact from occurring or being repeated;

(c) Fails to take that action; and

(d) The failure to act exposes the child to an unreasonable risk that intercourse or contact may occur between the child and the other person or facilitates the intercourse or contact that does occur between the child and the other person.

[27] *See, e.g., State v. Shamp*, 422 N.W.2d 736, 740 (Minn. Ct. App.) (ruling that where victim and defendant do not live in the same house, and the defendant does not control the victim's

tions periods for claims of incest reflect a legislative recognition of the need to protect children in relationships involving legal rights vis-à-vis the child, such as those accorded to parents and other family members. Other relationships between adults and children can, at any given time, exist or dissolve without continuing obligation. Control or authority over a child that is not based on blood or adoption but on the adult's title or position, is transient in time and degree, and is always terminable by the parent or guardian.

¶ 71. Neither should we assume that claims for sexual assault of minors by persons other than blood or adoptive relatives, or persons performing psychotherapy, were unknown to, or overlooked by the legislature. The parties cite abundant literature on the incidence of child sexual abuse. Despite this collection of data, the legislature has not expressly provided for an extended statute of limitations for non-incestuous sexual assault of a minor, when the alleged perpetrator is a person in a position of trust vis-à-vis the child/victim. We will not furnish that extension.[28] "Statutes creating limitations

daily movements, defendant's authority is not sufficient to prevent the victim from reporting the crime), *rev'd on other grounds*, 427 N.W.2d 228 (1988); *State v. French*, 392 N.W.2d 596 (Minn. Ct. App. 1986) (concluding that statute of limitations not tolled where, although the victim was abused by her uncle, an elder in her church, her uncle did not control her day-to-day life, did not engage in "active coercion" to prevent her from reporting the abuse, and prior to reporting the abuse to law enforcement officials, the victim's church congregation attempted to resolve the matter in private), *collected in* Jessica E. Mindlin, *Child Sexual Abuse and Criminal Statutes of Limitations: A Model for Reform*, 65 Wash. L. Rev. 189, 207 n.61 (1990).

[28] Other courts have shown similar restraint on the question of extending the statute of limitations in non-incestuous

are to be reasonably and fairly construed, but should not be extended by [judicial] construction." *Korth*, 115 Wis. 2d at 333, quoting *Pugnier v. Ramharter*, 275 Wis. 70, 77, 81 N.W.2d 38 (1957). Thus, the only applicable statute of limitations here is the statute concerning persons under a disability (minority).[29]

¶ 72. Plaintiff T.C. was assaulted for 7 years, from 1980 through 1987. T.C. turned 18 years old in 1984. The statute of limitations began to run in 1984 on his cause of action for assaults occurring when he was a minor, and expired in 1986. Wis. Stat. § 893.16 (1981–82). T.C. did not file this action until 1994. The statute of limitations began to run on his cause of action for the assaults occurring in the last year, 1987, at the time of those assaults, and expired in 1989. None of T.C.'s claims are timely. They are barred by the statute of limitations. Wis. Stat. § 893.57 (1985–86).

¶ 73. Plaintiff J.J. was sexually assaulted in 1968. Because his complaint does not recite his date of birth, we will simply infer that J.J. was school-age, or at least 6 years old, at the time of the assaults. There-

_____

sexual assault cases. *See, e.g., Anonymous v. Anonymous*, 584 N.Y.S.2d 713, 724 (N.Y. Sup. Ct. 1992) (inviting legislative adoption of discovery rule for sexual abuse cases); *Doe v. R.D.*, 417 S.E.2d 541, 543 (S.C. 1992) (holding that an exception to the unambiguous statute of limitations must come from legislature).

[29] However, we recognize that the statute of limitations for intentional torts applies to that part of T.C.'s claim for sexual assaults occurring after he reached the age of 18.

In addition, A.C., Susan Smith, and John Brown all allege breach of contract by the local church and the Archdiocese. The discovery rule, however, does not apply to contract causes of action. Instead, a contract claim accrues at the moment of breach. *CLL Associates Ltd. Partnership v. Arrowhead Pacific Corp.*, 174 Wis. 2d 604, 497 N.W.2d 115 (1993).

fore, J.J. would have turned 18 in 1980, at the latest. Thus, at the latest, the statute of limitations began to run on his cause of action in 1980, and expired in 1981. J.J. did not file this action until 1994. J.J.'s claims are not timely. They are barred by the statute of limitations. Wis. Stat. § 893.33 (1977).

¶ 74. Plaintiff A.C. was sexually assaulted in 1978. Because A.C.'s complaint does not recite his date of birth, we will simply infer that A.C. was school-age, or 6 years old, at the time of the assaults. Therefore, A.C. would have turned 18 years old in 1990. The statute of limitations began to run on his cause of action for those assaults in 1990, and expired in 1991. A.C. did not file this action until 1994. A.C.'s claims are not timely. They are barred by the statute of limitations. Wis. Stat. § 893.33 (1977).

¶ 75. Plaintiff Susan Smith was sexually assaulted in either 1968 or 1969. Susan Smith turned 18 years old in 1978. The statute of limitations began to run on her claims in 1978, and expired in 1979. Susan Smith did not file this action until 1993. Susan Smith's claims are not timely. They are barred by the statute of limitations. Wis. Stat. § 893.33 (1977).

¶ 76. Plaintiff John Brown was sexually assaulted in 1979. John Brown turned 18 years old in 1984. The statute of limitations began to run on his claims in 1984, and expired in 1985. John Brown did not file this action until 1993. John Brown's claims are not timely. They are barred by the statute of limitations. Wis. Stat. § 893.33 (1977).

¶ 77. We reach our conclusion in these cases not because we lack compassion for victims of non-incestuous sexual assault, or because such assault is somehow less reprehensible than incest. These plaintiffs have brought very serious allegations that when they were

354

children or teenagers, they were abused by clergymen. Undoubtedly, claims of long ago assault and subsequent psychological and emotional injury can invoke pain and frustration not only for the victims but for their families and loved ones. Certainly the pain and stigma of allegations of sexual assault are felt also by those accused of intentional and negligent misconduct.[30]

¶ 78. When such allegations are made long after the alleged occurrence, the potential for fraud is heightened. The opportunity to fairly prosecute, and to defend against, these claims is frustrated.[31]

## SUNBURSTING THEORY

¶ 79. The plaintiffs suggest that if we should hold that the discovery rule does not save these claims, we thereby violate the doctrine of "sunbursting." In other

---

[30] Recognizing this potential for stigma, some states have enacted statutes directly protecting defendants' privacy in sexual abuse cases, until at least the preliminary limitations inquiry, or a certificate of merit proceeding, is completed. *See, e.g.*, Cal. Civ. Proc. Code § 340.1(g) (West Supp. 1997) (plaintiffs 26 years or older at time of filing suit may not serve complaint upon defendant until after court finds claim reasonable and meritorious); La. Rev. Stat. Ann. § 9:2800.9(d) (West Supp. 1997) (court must find reasonable and meritorious cause for filing action before defendant may be named in petition); Vt. Stat. Ann. tit. 12, § 522(b) (West Supp. 1995) (complaint to remain sealed, if defendant moves to dismiss claim as time-barred, motion hearing held in camera).

[31] One California justice identified the danger of allowing untimely claims like those now before us: "Society's justifiable repugnance toward (sexual abuse of a child). . .is the reason why a falsely accused defendant can be gravely harmed." *John R. v. Oakland Unified School Dist.*, 769 P.2d 948, 963 (Cal. 1989) (Eagleson, J., concurring and dissenting).

words, by holding that these plaintiffs discovered, or in the exercise of reasonable diligence, should have discovered all the elements of their cause of action within one or two years after they reached majority, we have applied a new rule of law adversely to unsuspecting plaintiffs. We disagree.

■

¶ 80. In a recent decision of this court, *Jacque v. Steenberg Homes, Inc.*, 209 Wis. 2d 605, 623–24, 563 N.W. 2d 154 (1997), we described sunbursting as an exception to the general rule that a decision which overrules precedent is accorded retroactive effect. Essentially, we said that when a court announces a new rule of law, it may invoke the device of prospective overruling to limit the effect of the newly announced rule, when retroactive application would be inequitable. *Jacque*, 209 Wis. 2d at 623–24. In this opinion, we announce no new rule of law. Instead, our conclusion rests upon existing statutes of limitations, as well as a reading of case law interpreting those statutes. The fact that plaintiffs here allege sexual assault as children, while the *Pritzlaff* plaintiff was allegedly assaulted as an adult, is not a sufficient distinction to transform our result here into "a new rule."

## ACCRUAL OF CLAIMS OF PLAINTIFFS ALLEGING REPRESSED MEMORY OF EVENTS

¶ 81. According to their complaints, Plaintiffs John BBB Doe and John MMM Doe both developed coping mechanisms, including denial, repression and dissociation, as a result of their abuse. According to briefs[32] they filed in opposition to the motions to dis-

---

[32] Briefs filed on behalf of the parties are not pleadings, depositions, answers to interrogatories, admissions or affida-

miss, BBB Doe suppressed his memory of the sexual contacts until sometime in 1990, and MMM Doe suppressed his memory of the sexual contacts until approximately 1992. Because their recollections were delayed, both Doe plaintiffs assert that they were unable to discover the identity of the abuser and the fact of their abuse until their long-repressed memories returned. The circuit courts dismissed their claims, however,[33] based on the fact that even if the discovery rule applied to these cases, the Doe plaintiffs should have discovered their injuries earlier.

¶ 82. In *Pritzlaff*, the plaintiff claimed that she had suppressed and been unable to perceive the existence, nature, or cause of her psychological and emotional injuries until approximately seven months before she filed her complaint. 194 Wis. 2d at 307–09. In affirming the order of dismissal in that case, we were not required to determine the sufficiency of Pritzlaff's suppression or repression claims, because we concluded that she knew all of the elements of her claim by the time her relationship with the defendant

---

vits, documents that a court normally considers to determine whether there is any genuine issue as to any material fact, and whether the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.02(2). Nonetheless, because the defendants' briefs respond to the Doe plaintiffs' assertions in their briefs that they repressed memory of the event of the sexual contacts, for purposes of these cases we consider those assertions of repression as if they were alleged in the pleadings.

[33] The circuit court in the MMM Doe case did not expressly consider the Jackson affidavit on the record. According to Wis. Stat. § 802.06(2), if matters outside the pleadings are presented to and not excluded by the court, we treat the motion as one for summary judgment and dispose of it as provided in Wis. Stat. § 802.08. *See Brown v. LeChance*, 165 Wis. 2d 52, 60–61, 477 N.W.2d 296 (Ct. App. 1991).

priest had ended. *Id.* at 315. Because the alleged acts were the product of force and coercion, such acts caused actual damage, and the forcible sexual contact was immediately actionable. *Id.* at 317. This was true even if Ms. Pritzlaff had suppressed, or been unaware of, additional harm resulting from the alleged acts.

¶ 83. The Doe plaintiffs here contend not only that they have suppressed or repressed awareness of their emotional and psychological injuries, but that they have also suppressed or repressed knowledge of the assaults themselves. The defendants respond that there is little or no reliable scientific basis for the Doe plaintiffs' claims of recently recovered memory of the events. To date, Wisconsin appellate courts have not recognized a non-incestuous claim of sexual assault where the plaintiff asserts that he or she has repressed or suppressed all awareness of at least one element of his or her claim beyond the point at which the applicable statute of limitations would expire.[34] We look to other courts to consider their experience in this realm.

¶ 84. Before holding that the discovery rule does not save a claim of incest filed more than two years after the plaintiff reached majority, the Texas Supreme Court considered the plaintiff's claim that she had

---

[34]*But see Byrne v. Bercker*, 176 Wis. 2d 1037, 1040, 501 N.W.2d 402 (1993) (daughter claimed repressed memory of incest by father; although experts opined that many incest victims repress their memories, the court did not have to rule on reliability of repression theory because the plaintiff admitted she recalled the sexual attacks more than two years before filing her complaint). In *Pritzlaff v. Archdiocese*, 194 Wis. 2d 302, 533 N.W.2d 780 (1995), we limited the specialized discovery rule of *Hammer v. Hammer*, 142 Wis. 2d 257, 418 N.W.2d 23 (Ct. App. 1987), along with its subsequent codification, as applicable only to cases of incest. 194 Wis. 2d at 321.

repressed all memory of her father's abuse. *S.V. v. R.V.*, 933 S.W.2d 1 (Tex. 1996). The court discussed the differing views in the scientific community on the phenomenon of repressed and subsequently recovered memory of childhood sexual assault. Although the following excerpt is lengthy, it fairly summarizes in layman's terms the concepts of repression, suppression, and dissociation, and the depth of the scientific and legal debate on those topics.

> Repression is the term used to describe unconscious forgetting of events that cause the individual pain. The terms "repression" and "dissociation", however have variable meanings, (but). . . [t]here is overwhelming consensus that repression exists. It differs from "simple forgetting", but there is debate in the scientific community about the extent to which amnesia stems from repression or simple forgetting. A number of theories distinguish repression from suppression, which is the conscious forgetting of unpleasant thoughts or emotions. With unconscious repression, a plaintiff may be said to be "blamelessly ignorant" of her amnesia. On the other hand, a plaintiff who consciously suppresses memories of an event might not be as "ignorant".

> Some therapists believe that repressed material can be restored to consciousness if the anxiety associated with the memory is removed. This belief, of course, assumes that the material has not been "simply forgotten" or confabulated. In addition, since recalling is a constructive process, a host of defense mechanisms may distort images or feelings at that phase as well. One nineteenth-century psychologist cautioned of the dangers inherent in recall of partial memories: Total forgetfulness is not serious; but partial forgetfulness is treacherous. . . . [W]e are liable to fill in from our imagination and

disjointed fragments furnished by memory. . . .We unwittingly become creative artists. . . .

The question whether recovered memories are valid has elicited the most passionate debate among scholars and practitioners, and the consensus of professional organizations reviewing the debate is that there is no consensus on the truth or falsity of these memories.. . .While virtually all would agree that memories are malleable and not necessarily fully accurate, there is no consensus about the extent or sources of this malleability.. . .It is not known how to distinguish, with complete accuracy, memories based on true events from those derived from other sources. It is not known what proportion of adults who report memories of sexual abuse were actually abused. . .[T]here is no completely accurate way of determining the validity of reports in the absence of corroborating information. The available scientific and clinical evidence does not allow accurate, inaccurate, and fabricated memories to be distinguished in the absence of independent corroboration.

Recovered memories come to be regarded as true for a variety of reasons. Therapists who expect to find abuse often do. And because the therapist occupies a position of authority and trust with the patient, this "confirmatory basis" can lead to leading questions and other forms of suggestion (citation omitted). . . .Some therapists may jump to conclusions and may fail to explore other causes for the memories. Therapists also may interpret certain symptoms as indicating childhood sexual abuse, but those symptoms may be so general that they do not eliminate other possible ills. . . . The point is this: the scientific community has not reached consensus on how to gauge the truth or falsity of "recovered" memories.

933 S.W.2d at 17–18 (citations and internal quotation marks omitted).

¶ 85. Despite resolving factual inferences in favor of the Doe plaintiffs, including consideration of the Jackson affidavit on behalf of MMM Doe, other problems remain. For instance, the record before us is unclear as to just how long after the sexual abuse took place that the Doe plaintiffs repressed their memory of the abuse.[35] John BBB Doe's complaint does not assert when his coping mechanisms, including repression, developed. According to his brief, he diligently sought psychological counseling in 1983 at age 27, and had no memory of his early childhood up to the eighth grade until December, 1987. BBB Doe brief at 5; A–36. Similarly, John MMM Doe's complaint does not assert when his coping mechanisms developed. His brief merely states that "throughout his adult years, Appellant repressed all memory of the sexual molestation." MMM Doe brief at 5.

¶ 86. A Maryland court explained one of the difficulties a claim of repression poses for limitations purposes. The court compared the differences between two models, "serial repression" versus "collective repression" as described in repression theory literature. *Doe v. Maskell*, 679 A.2d 1087, 1088 n.3 (Md. 1996), *cert. denied*, 117 S. Ct. 770 (1997). According to the serial repression model, a victim of sexual assault

---

[35] If, in fact, Susan Smith also has alleged that she repressed memory of the event of the sexual assault, there remains the question of when she undertook or incurred that repression. According to a portion of the Smith record, "the severity of the trauma, combined with the absence of any adult nurturance, accounts for the repression that subsequently occurred." That statement does not indicate at what point Smith allegedly lost her memory of the event.

or some other traumatic event, could repress the memory of the event immediately after occurrence. This repression could occur following each of multiple events. Under the collective repression model, a person could have awareness of the events for a length of time, even over the course of multiple events, and then repress those memories altogether, at some later date. *Id.* (citation omitted). Thus, the timing of when the memories are repressed poses another complication.

¶ 87. The *Maskell* court, after reviewing the arguments for and against recognition of repression as a scientific phenomenon separate from the normal process of forgetting, declined to recognize repression of past sexual abuse as a means of activating the discovery rule. It then invited the Maryland legislature to amend the statute of limitations for such claims, if it saw fit to do so. *Id.*

¶ 88. Some courts have accepted testimony regarding repressed memory.[36] Cases cited by the Doe plaintiffs include *Shahzade v. Gregory*, 923 F. Supp. 286, 287 (D. Mass. 1996) (ruling on motion in limine, trial court considered factors from *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and found reliability of phenomenon of repressed memory established); and *Isely v. Capuchin Province*, 877 F.

---

[36] The concurrence states that a substantial majority of courts hold that the discovery rule preserves the claims of those suffering from repressed memory, citing a dissenting opinion in an Arizona case. We do not dispute that a majority of courts considering the question have allowed a claim of repressed memory to extend the accrual date for sexual assault claims. The case cited by the concurrence, however, fails to distinguish between claims of incest and non-incestuous sexual assault, and also fails to identify which of those jurisdictions have a legislatively extended discovery rule.

Supp. 1055, 1063–64 (E.D. Mich. 1995) (considering motions in limine raised shortly before and during trial, court relied on *Daubert* and set foundational criteria for validity and reliability of repressed memory theory).

¶ 89. In *Shazade*, the defendant moved for summary judgment shortly after the trial court decided to permit expert testimony about repressed memory. *Shazade v. Gregory*, 930 F. Supp. 673 (D. Mass. 1996). The court declined to grant summary judgment, based on Massachusetts' statutory discovery rule for minor victims of sexual assault. That statute was not limited to victims of incest or exploitation by a therapist.

¶ 90. In *Isely*, the court held a *Daubert* type hearing and decided to admit testimony on repressed memory. 877 F. Supp. 1055. The motions in limine to disallow expert testimony on repressed memory were filed shortly before and during the trial. 877 F. Supp. at 1056 nn.1–2. Presumably, the motions in limine were filed after the trial court had already denied defendant's motions for summary judgment. *See Isely v. Capuchin Province*, 880 F. Supp. 1138, 1159–60 (E.D. Mich. 1995). Our concern here is more fundamental.

¶ 91. The question presented in this certification is whether, when a plaintiff claims repression of an element of his or her cause of action for non-incestuous sexual abuse, and allegedly later regains memory of that element, the discovery rule saves his or her untimely claims for statute of limitations purposes.[37] In other words, we must decide whether an allegation

---

[37] Thus, we do not address the evidentiary question of whether, in a proper case, testimony regarding a plaintiff's repressed, and subsequently recovered, memory is admissible during the course of a trial.

of repressed memory invokes the discovery rule to save an untimely action.

¶ 92. This question provokes an analysis of a number of significant public policy considerations. The reliability and ascertainability of a repressed memory claim, however defined, is one consideration. In addition to the problem of when the memories of assault became repressed, as pointed out in *Maskell*, we must consider valuable public policy goals served by statutes of limitations, namely preserving a plaintiff's right to bring a claim juxtaposed with a defendant's right to be free of stale, and potentially fraudulent claims. The purposes for the limitations extensions already enacted by the legislature are additional examples of the public policy considerations that this certified question embraces.

¶ 93. Based upon those considerations, as a matter of law we conclude that it would be contrary to public policy, and would defeat the purposes of limitations statutes, to allow claims of repressed memory to invoke the discovery rule and to indefinitely toll the statutory limitations for these plaintiffs. We hold that a claim of repressed memory of past sexual abuse does not delay the accrual of a cause of action for non-incestuous sexual assault, regardless of the victim's minority and the position of trust occupied by the alleged perpetrator.

¶ 94. The measured response of our legislature supports this conclusion. Wisconsin law already protects claims that accrue during childhood. Wis. Stat. § 893.16. The legislature has also extended the tolling period for claims brought by children and adults for incest, and for sexual exploitation by a therapist. Wis. Stat. §§ 893.587, 893.585. Allowing plaintiffs to simply

assert repressed memory in their pleadings or briefs and thereby revive a suit years if not decades after the non-incestuous sexual assault occurred would extend the tolling period indefinitely. Such an extension would increase the risk of fraudulent claims and severely undermine the statute of limitations. The Wisconsin legislature has already afforded some, but not all, of the limitations extensions afforded by other states. That legislative restraint, together with our balancing of the policies protecting plaintiffs' right to enforce legitimate claims and those protecting defendants from having to defend against stale or fraudulent claims, causes the balance to tip against judicially extending the applicable limitations period for these claims of repressed memory.

¶ 95. Next, we determine the statute of limitations applicable to these plaintiffs. As with the five claims discussed above, the claims of the two Doe plaintiffs are controlled by the statute of limitations for minors.

¶ 96. Plaintiff John BBB Doe was assaulted between 1964 and 1969. BBB Doe turned 18 years old in 1974. He filed this action in 1992. The statute of limitations began to run in 1974 on his cause of action for assaults occurring when he was a minor, and expired in 1975. John BBB Doe's claims are untimely. They are barred by the statute of limitations. Wis. Stat. § 893.33 (1973).

¶ 97. Plaintiff John MMM Doe was assaulted between 1965 and 1967. He turned 21 years old in 1970. He filed this action in 1993. The statute of limitations began to run in 1970 on his cause of action for assaults occurring when he was a minor, and expired in 1971. John MMM Doe's claims are untimely. They are

barred by the statute of limitations. Wis. Stat. § 893.33 (1965).

## CONCLUSION

¶ 98. In light of our conclusion that all seven plaintiffs' claims based on intentional sexual assault are barred by the applicable statute of limitations, we need not address their claims based on respondeat superior and negligent employment theories. Plaintiffs' derivative causes of action against the Archdiocese and the churches accrued at the same time that the underlying intentional tort claims accrued, and similarly would be barred by the statute of limitations. *See Pritzlaff*, 194 Wis. 2d at 312 (statute of limitations period for actions against the Archdiocese begins on same date the cause of action accrued against the individual priest defendant). Finally, without deciding whether Wis. Stat. § 48.981 permits a civil cause of action for failure to report child abuse, such claims by plaintiffs T.C., J.J., A.C., Susan Smith, and John Brown here are merely derivative of the underlying intentional tort claims, and are likewise untimely. Therefore, we conclude that in each case, the respective circuit courts properly held that the claims of each plaintiff are barred by statutes of limitations.

*By the Court.*—The decisions of the circuit courts are affirmed.

¶ 99. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*concurring*). This case is largely governed by and inexorably follows from *Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis. 2d 302, 533 N.W.2d 780 (1994). I join the mandate of the court because I recognize

*Pritzlaff* as the law of Wisconsin, even though I did not agree with the majority opinion in *Pritzlaff*, and I continue to believe the decision unfortunate.

¶ 100. I write separately to point out the nature of the rule the majority adopts and why I believe the court need not take this approach to the difficult problem of the validity and reliability of evidence in cases such as the ones presented.

¶ 101. The majority opinion discusses at great length the facts of the cases before the court. Nonetheless, the majority's holding is not limited to the facts of the cases presented. The majority opinion enunciates a broad rule of law encompassing all children: A plaintiff who while a minor was sexually assaulted by a person in a position of trust (such as a clergyperson)[1] is, as a matter of law, irrebuttably presumed to have discovered the injury and the cause thereof at the moment of the assault, regardless of whether the plaintiff repressed all memory of the assault or the plaintiff did not know and should not have reasonably known of the injury or cause thereof.

¶ 102. I believe that the principal failing of both *Pritzlaff* and the majority opinion today is that the discovery rule is applied categorically; categories control, particular facts are irrelevant. But by its very nature, the discovery rule is a matter largely of a plaintiff's mental state (using both subjective and objective

---

[1] The rule does not apply when the offender was a family member. The legislature codified *Hammer v. Hammer*, 142 Wis. 2d 257, 418 N.W.2d 23 (Ct. App. 1987), in Wis. Stat. § 893.587 declaring that a cause of action for incestuous abuse will not accrue until the victim discovers, or in the exercise of reasonable diligence should have discovered, the fact and probable cause of injury.

367

criteria); a plaintiff's mental state is not a matter amenable to categorical application.[2]

¶ 103. The flaw in attaching categorical rules to the discovery rule is readily apparent in today's decision involving plaintiffs who were children at the time of the assault. The court has reduced the mental and emotional state of a traumatized child, whether two years of age or 16 years of age, to an absolute rule of law, instead of applying the discovery rule to each child victim on the basis of the particular circumstances.

¶ 104. I recognize that stale claims and repressed memories recovered after decades pose daunting problems for a court's search for the truth. But because testimonial reliability is a key issue, I would tackle it in the manner we handle such questions in other instances.[3]

¶ 105. For those plaintiffs who do not allege repressed memory, the fact finder ordinarily determines when the plaintiff knew or should have known of the injury and its cause. For those plaintiffs who allege repressed memory I would treat repressed memory evidence like other challenged scientific evidence and expert witness opinion.

¶ 106. Realizing that its approach to the discovery rule is contrary to our prior cases, the majority tries

---

[2] It has been reported that the "substantial majority of courts hold that the discovery rule preserves the claims of those suffering from repressed memory." *Doe. v. Doe*, 931 P.2d 1115, 1122 (Ariz. Ct. App. 1996) (Lankford, J., dissenting in part), *review granted*, Feb. 26, 1997, *citing Farris v. Compton*, 652 A.2d 49, 59 (D.C. App. 1994); *Olsen v. Hooley*, 865 P.2d 1345, 1349 (Utah 1993). *See also McCollum v. D'Arcy*, 638 A.2d 797, 799–800 (N.H. 1994); *Ault v. Jasko*, 637 N.E.2d 870, 873 (Ohio 1994).

[3] *See* Wis. Stat. chs. 904, 906 and 907 (1995–96).

to narrow its decision by explaining that the acts complained of in this case were intentional. Majority op. at 343–45. But on what theory are we to distinguish for purposes of the discovery rule between negligent acts and intentional acts? Why would the running of the statute of limitations against the plaintiff be controlled by the mens rea of the defendant?

¶ 107. Finally, I comment on the present case in relation to the recently issued *Estate of Cheryl Makos v. Wisconsin Masons Health Care Fund*, 211 Wis. 2d 41, 564 N.W.2d 662 (1997). Two members of the court (Justices Steinmetz and Crooks) concluded in *Makos* that the Wisconsin constitution precludes any statute of repose that operates to forestall a claim before the injury and cause thereof are known or should have been reasonably known. If, as a fair reading of the pleadings in the present case allows, these plaintiffs did not suffer injury until they recovered their harmful memories of their assaults, the courthouse doors have been closed to them by operation of the majority's decision in contravention of Wis. Const. art. I, § 9 according to the two opinions in *Makos*. Just like Ms. Makos, who did not detect the wrong that occurred to her through the pathologist's misdiagnosis until after the statute of limitations (as limited by the statute of repose) had run, the plaintiffs here did not detect the wrongs that had been done to them until after the statute of limitations had run. The plaintiffs, like Ms. Makos' estate, allege that they did not discover their injuries until the courthouse doors were barred. Ms. Makos' estate won; these plaintiffs lose.

¶ 108. The foundation of our discovery rule jurisprudence has, in my opinion, been disturbed by *Pritzlaff* and this decision.

¶ 109. For the reasons set forth, I write separately.

| NAME | AGE AT TIME OF ABUSE | DATE(S) OF ABUSE | DATE COMPLAINT FILED | AGE AT TIME COMPLAINT FILED |
|---|---|---|---|---|
| John BBB Doe | 8-12 or 13 | 1964-1969 | 8/20/92 | 36 |
| John MMM Doe | 16-18 | 1965-1967 | 4/12/93 | 44 |
| T.C. | 14-21 | 1980-1987 | 2/22/94 | 28 |
| J.J. | School Age Minor | 1968 | 2/16/94 | Unknown Age of Adulthood |
| A.C. | School Age Minor | 1978 | 2/16/94 | Unknown Age of Adulthood |
| Susan Smith | 8 or 9 | 1968-1969 | 3/10/93 | 33 |
| John Brown | 13 | 1979 | 3/9/93 | 27 |